G-abbiblli, J.
The issue here presented is whether, as argued by appellant teachers association, class size in a public school is a term or condition of employment so as to be a mandatory topic of bargaining under the Taylor Law (Civil Service Law, art. 14); or whether, as held by a majority of the Public Employment Relations Board (PERB) and a unanimous Appellate Division, the question of class size is one of educational policy and as such susceptible of independent action by respondent employer, the board of education.
The facts are stipulated. In May, 1970 at the beginning of negotiations between the board and teachers association for the 1970-1971 contract, the association submitted a proposal which *49 would, inter alia, have set class sizes in kindergarten and the first grade at 20 pupils as the number ‘ ‘ for whom a teacher is responsible during a single period in a single day ” and for grades two through six at 25 pupils. It was further proposed that any increase beyond those mínimums would have to be agreed upon by the teacher and building principal, and any disagreement would be subject to grievance procedures elsewhere. set forth. The board did not agree to this, but in turn proposed in writing that the relationship between effective learning and class size and teacher load should be subject to continued examination by the parties, and that it was desirable to maintain administrative flexibility in arranging class sizes and teacher loads in order to allow for program diversity and innovation, and to allow for equitable arrangements among teachers. In this connection the board agreed to consider. New York State Teachers Association guidelines in planning for the 1971-1972 school year. In this proposal the board recognized that ‘ ‘ Excessive class size or teacher load may affect the emotional or mental well-being of the teacher.”
The association commenced this improper practice proceeding alleging that the board failed to negotiate in good faith and had therefore violated subdivision 1 of section 209-a of the Civil Service Law. The board’s answer rested mainly on the contention that negotiations are mandatory only with respect to terms and conditions of employment (§ 204, subd. 2), and that class size was not such a term or condition. There was thus presented a problem of legal dimensions. The hearing examiner ruled for the association on the ground that class size had nothing to do with the formulation of primary educational policy; that, rather, it had significant impact on teachers’ working conditions.
The PERB majority recognized, as the board of education conceded, that class size bore on teacher load and that as a consequence of class size this impact on the teachers would be subject to mandatory negotiation; but it was held that the fixing of class size initially was purely the subject of educational policy made in light of the employers’ resources and the needs of its constituency. The dissenting member could not make the division between the original designation of class size and the resulting impact on working conditions and stated that the *50 causal chain was so direct as not to admit of the distinction imposed by the majority.
The Appellate Division unanimously upheld the PERB majority stating that the distinction was well taken and provided a reasonable basis for the majority’s decision. We agree.
In the private sector the Supreme Court has held that the scope of mandatory bargaining is indeed wide, and that, even though the problem involves a management decision striking at basic company organization, it is subject to negotiation if industrial experience normally includes the problem and the union could realistically contribute to a solution of the problem. (Fibreboard Corp. v. Labor Bd., 379 U. S. 203, 211.) Four members of the court separately concurred on the ground the majority language was too broad; that decisions concerning the commitment of investment capital and the basic scope and direction of the enterprise were not negotiable terms or conditions of employment (p. 223). The various case by case interpretations given the problem of independent employer action by the National Labor Relations Board and the Federal courts (see Rabin, Fibréboard And The Termination of Bargaining Unit Work: The Search For Standards In Defining The Scope Of The Duty To Bargain, 71 Columbia L. Rev. 803; Rabin, Limitations on Employer Independent Action, 27 Vanderbilt L. Rev. 133), are, of course, not binding here (Matter of Civil Serv. Employees Assn. v. Helsby, 21 N Y 2d 541, 546). Nor is that line of authority especially persuasive except as it suggests that there is an area of nonnegotiable policy making left to the employer.
As a reviewing court in an article 78 proceeding where the question is whether the administrative agency made a correct legal interpretation, our task is merely to see whether the determina.fion “ was affected by an error of law or was arbitrary and capricious or an abuse of discretion ” (CPLR 7803, subd. 3). So long as PERB’s interpretation is legally permissible and so long as there is no breach of constitutional rights and proteetions, the courts have no power to substitute another interpretation on the strength of what the NLRB or the Federal courts might do in the same or a similar situation. The Legislature, in article 14 of the Civil Service Law, has provided that terms and conditions of employment are subject to mandatory *51 negotiation (§ 204, subd. 2; Board of Educ. v. Associated Teachers of Huntington, 30 N Y 2d 122, 127), defined “ terms and conditions of employment ” to mean salaries, wages, hours and “ other terms and conditions of employment ” (§ 201, subd. 4), created PEBB (§ 205), and lodged with PEBB the power to resolve disputes arising out of negotiations (§ 209). Inherent in this delegation is the power to interpret and construe the statutory scheme. Such construction given by the agency charged with administering the statute is to be accepted if not unreasonable (Udall v. Tallman, 380 U. S. 1, 16-18; Matter of Colgate-Palmolive-Peet Co. v. Joseph, 308 N. Y. 333, 338; Matter of Mounting & Finishing Co. v. McGoldrick, 294 N. Y. 104, 108). One of the features linking Matter of City School Dist. v. Helsby (42 A D 2d 262), relied on by the association, with the case at bar is that in both cases PEBB construed items as either includable or not includable as terms or conditions of employment, a reasonable basis being found for such construction in such case by the Appellate Division. The factor distinguishing the two cases is that there the employer’s decision to alter the length of the working year, found by PEBB to be a condition of employment, can be rationalized as directly affecting only the employer and employee of relationship. In the instant case PEBB was free to find that class size is a basic element of educational policy bearing on the extent and quality of the service rendered. The two PEBB interpretations are thus not inconsistent.
It is to be noted that PEBB has held only that determination of class size is not negotiable. It has not been held that the impact of class size on the teachers is not negotiable. As stated in PEBB’s majority opinion: “ Nevertheless, impact is a matter for negotiations. Thus, it is not the thrust of this decision that an employer is not required to negotiate on subjects which affect the allocation of resources because salaries clearly have such an effect; rather, the thrust of this decision * * * is that basic policy decisions as to the implementation of a mission of an agency of government are not mandatory subjects of negotiations.” PEBB’s rationale could, we believe, be crystallized with this example: The decision whether, say, sections of the fourth grade should contain 25, 28 or 32 pupils is a policy decision and not negotiable; whereas whether the teachers responsible for the sections are to receive varying consideration *52 and benefits depending on the ultimate size of each section as so determined is mandatorily negotiable as a condition of the employment.
The association’s strong reliance on Board of Educ. v. Associated Teachers of Huntington (30 N Y 2d 122, supra) is misplaced. There, unlike the present case, the problem areas clearly involved terms and conditions of employment. The dispute centered about whether the employer was limited under the Education Law as to the terms and conditions of employment it could negotiate, or whether the Taylor Law made the employer’s power unqualified so that it could freely negotiate such terms and conditions without regard to express authority under the Education Law. The question in the instant case is less complex, being whether, in the first instance, the problem area involves a term or condition of employment at all. We agree that PEBB articulated a rational basis for its determination in the employer’s favor and that it had the power to make this determination.
The judgment appealed from is affirihed.
Chief Judge Bbeitel and Judges Jasen, Jones, Wachtleb and Babin concur; Judge Stevens taking no part.
Judgment affirmed, with costs.