■  In the Matter of WALTER LIPPMANN et al., Appellants, v THOMAS DELANEY, as Sheriff of Westchester County, et al., Respondents.—In a proceeding pursuant to CPLR article 78, *inter alia,* (1) to compel reinstatement of petitioner Lippmann to his position as Deputy Sheriff, Crime Laboratory Technician, or (2) in the alternative, to reclassify him as a Deputy Sheriff, Criminal Investigator, petitioners, Lippmann and the Westchester County Civil Service Employees Association, Inc. (CSEA), appeal from a judgment of the Supreme Court, Westchester County, entered April 14, 1975, which denied the petition and vacated a stay contained in an order

to show cause dated February 7, 1975. By order of this court, dated April 22, 1975, a stay was granted requiring respondents to continue the employment of Lippmann pending determination of the appeal. Judgment affirmed, without costs, and stay in the order of April 22, 1975 terminated. In March, 1968 Lippmann was appointed and employed in the office of the Sheriff of Westchester County as a Deputy Sheriff, Criminal Investigator. In 1969 he was assigned as a Deputy Sheriff, Crime Laboratory Technician, and has served in that capacity to date. In 1971 the Sheriff's department became part of the State civil service system, Lippmann's position was classified as competitive, and job specifications were formulated. Generally, he was assigned the duty of performing qualitative and quantitative analyses of criminal evidence. Because of budgetary restrictions the Westchester County Board of Legislators determined that, with the exception of a ballistics function, the crime laboratory duties within the Sheriff's department were to cease. Accordingly, the board eliminated three of the four laboratory technician positions, retaining only a ballistics expert. By memorandum dated January 20, 1975 respondent Delaney, Sheriff of Westchester County, notified Lippmann that his position was abolished, effective no later than February 9, 1975. Lippmann now seeks reinstatement or reclassification. We are of the opinion that none of the issues raised by petitioners have merit. Mr. Justice Hopkins, in his dissent, expresses concern over one issue, that is, whether the abolition of Lippmann's position is in violation of the employment contract entered into by Westchester County and the CSEA. He thinks it is. We do not. A person appointed in accordance with the provisions of the Civil Service Law does not have such permanency of tenure that his position must be continued and appropriation made for payment of the salary originally attached to the position *(Matter of Wipfler v Klebes,* 284 NY 248, 254; *Matter of Devins v Sayer,* 233 NY 690, and cases there cited). It is axiomatic that an appointing official has the power to abolish a civil service position when acting in good faith, and, in the absence of fraud or corruption, the motivations of the members of a legislative body are not the proper subject of judicial inquiry *(Bacon v Miller,* 247 NY 311, 318; *Michaelis v City of Long Beach,* 46 AD2d 772). Here the power to create, organize, alter or abolish offices and employments and, when required, to transfer their functions and duties, is expressly vested in the County Board of Legislators (Westchester County Charter, art. II, § 7, subd 1; L 1937, ch 617 as amd). A public employer does not surrender the power to abolish positions in good faith, through the vehicle of a collective bargaining agreement, unless the subject of the abolition of position constitutes a term or condition of employment. In matters involving disputes over negotiation, the Public Employment Relations Board (PERB) has been given the authority to determine whether a particular matter is or is not negotiable as a term or condition of employment, and a determination of PERB on such an issue should be accepted if not unreasonable *(Matter of West Irondequoit Teachers Assn. v Helsby,* 35 NY2d 46). On more than one occasion PERB has held that reduction of a work force for economic reasons does not constitute a term or condition of employment and, so, is not a proper subject for collective bargaining between a public employer and an employee organization (see *Matter of Yorktown Faculty Assn.,* 7 PERB 7-4503; *Matter of the City of White Plains,* 5 PERB 5-3008). From the foregoing it is clear that the abolition of positions is not a term or condition of employment; that it is not the proper subject of a collective bargaining agreement; and that the contractual provision, quoted in the dissent, is not binding upon the respondent public employer (see *Matter of Carmel Cent. School Dist. [Car-*

*mel Teachers Assn.]*, 76 Misc 2d 63). Further, the clause in issue did not prevent job abolition. It merely established a policy of the county to make every effort to relocate a displaced person in a comparable position, if there be such position available. The record demonstrates that such efforts were made, but that no comparable position was found. Rabin, Acting P. J., Martuscello and Latham, JJ., concur; Hopkins, J., dissents and votes to reverse the judgment and to remand the proceeding to Special Term for a hearing in accordance herewith, with the following memorandum, in which Brennan, J., concurs: I concur in the finding made by Special Term that the abolition of petitioner Lippmann's position was not caused in retaliation for his activities in reporting irregularities to the District Attorney. No evidence was produced by petitioner to support such a claim, and the evidence in the record rather sustains respondents' contention that the change in the jurisdictional control of the crime laboratory from the Sheriff to the Medical Examiner was made in the interests of administrative efficiency and economy. I am concerned, however, with Lippmann's rights under the agreement dated June 22, 1973 between the County of Westchester and the Civil Service Employees Association, Inc. (the bargaining unit representing Lippmann), reading as follows: "Sheriff's Department. In any reorganization of the Sheriff's Department, the County administration has no intention of depriving any permanent employee who is now on the payroll of a job. In fact, it is anticipated that most, if not all, existing units which are not to remain in the Sheriff's Department or go under the Judicial Conference, will be transferred intact to the jurisdiction of other County agencies. In the unlikely event that some present permanent employee is not transferred with his unit, he will be offered another position in County service in which his job status will be fully protected." Lippmann falls fairly within the terms of these provisions. He was a permanent member of the Sheriff's department, his position was affected by a reorganization and he was not transferred to the jurisdiction of the Medical Examiner when the change of structure occurred. Accordingly, the county's promise follows that in such an "unlikely event" he shall be offered "another position in County service in which his job status will be fully protected." Apparently, this promise was not carried out, although one other (Crespino) in the same unit and junior to Lippmann in service was offered and accepted a position with the Medical Examiner. The answer which respondents make to this claim is that the power to create or abolish positions is vested in the County Board of Legislators and cannot be surrendered in a collective bargaining agreement. This answer no longer is viable under the Taylor Act (Civil Service Law, art. 14). The quoted provisions of the agreement surely determine the "terms and conditions of employment" (Civil Service Law, § 204, subd 1). Nor is it an impermissible surrender of municipal power when salary structure or tenure or the arbitration of disputes is placed within the negotiated terms of a collective bargaining agreement (cf. *City of Amsterdam v Helsby*, 37 NY2d 19; *Matter of Associated Teachers of Huntington v Board of Educ., Union Free School Dist. No. 3, Town of Huntington*, 33 NY2d 229; *Syracuse Teachers Assn. v Board of Educ., Syracuse City School Dist.*, 42 AD2d 73, affd 35 NY2d 743; *Matter of West Irondequoit Teachers Assn. v Helsby*, 35 NY2d 46). The test is, in the words of the Court of Appeals, whether the provision is authorized by "collective bargaining under the Taylor Law (Civil Service Law, § 204, subd 1) [which] has broad scope with respect to the terms and conditions of employment, limited by plain and clear, rather than express, prohibitions in the statutes or decisional law" *(Syracuse Teachers Assn. v Board of Educ., Syracuse City School*

*Dist.,* 35 NY2d 743, 744, *supra* [bracketed word supplied]). When, as it appears here, the county was contemplating changes in the governmental organization of departments, and desired to make changes in such a way as not to leave the employees involved without a job, in view of their service, that objective was within its powers and constituted a legitimate subject of bargaining. The record here, however, is unclear whether Lippmann was offered another job in county employment, or whether he was actually passed over in favor of other employees when a job was open. The pronouncements of PERB do not reach the issue here. The enlightened attitude of the county in making an agreement to protect its long-term employees who might be adversely affected by a reorganization should not be equated with a refusal of a municipality to negotiate terms freezing positions or salaries. For these reasons, I vote to reverse the judgment and to remand the proceeding for a hearing at which the question of compliance with the collective bargaining agreement by the county can be fully explored and determined.