37 N.Y.2d 614 (1975)
In the Matter of the Arbitration Between Susquehanna Valley Central School District at Conklin, Appellant, and Susquehanna Valley Teachers' Association et al., Respondents.
Court of Appeals of the State of New York.
Argued September 10, 1975.
Decided October 28, 1975.
Frank C. Shaw for appellant.
Ira Paul Rubtchinsky and Bernard F. Ashe for respondents.
Judges JASEN, GABRIELLI and JONES concur with Chief Judge BREITEL; Judge FUCHSBERG concurs in a separate opinion in which Judge WACHTLER concurs; Judge COOKE taking no part.
*616 Chief Judge BREITEL.
In a special proceeding under CPLR 7503 for a permanent stay of arbitration demanded by a teachers' association under teacher grievance procedure, the school district appeals. The Appellate Division had affirmed an order directing it to proceed to arbitration under a collective bargaining agreement.
The alleged grievance still in issue relates to a staff reduction in the 1973-1974 school budget. The reduction had been included in the budget allegedly contrary to the collective bargaining agreement which had stabilized average class sizes and staff size. The agreement also provided for hiring two additional teachers for the academic year in question. Contending that the staff reduction violated the collective bargaining agreement, the teachers' association demanded arbitration, seeking reinstatement of the abolished positions. In its petition, the school district maintained that staff size, as a matter of law and policy, is within the board's exclusive prerogative, and therefore not arbitrable.
Prefatorily, it is important to note that the expansive rule expressed in Board of Educ. v Associated Teachers of Huntington (30 N.Y.2d 122, 130) that, in the absence of statutory provisions which prohibit collective bargaining as to a particular term or condition, any subject matter in controversy between a board of education and its teachers is subject to arbitration under a broad arbitration clause, has been restated, and more accurately, in Syracuse Teachers Assn. v Board of Educ. (35 N.Y.2d 743, 744). In the Syracuse case, it was said that "collective bargaining under the Taylor Law (Civil Service Law, § 204, subd 1) has broad scope with respect to the terms and conditions of employment, limited by plain and clear, rather than express, prohibitions in the statute or decisional law". Yet even this is not the sum of it.
Public policy, whether derived from, and whether explicit or *617 implicit in statute or decisional law, or in neither, may also restrict the freedom to arbitrate. School matters are but one example; indeed, matters affecting marriage, child custody, and the like, are not subject to unbridled arbitrability, as might be the case in a private building construction agreement (see, e.g., Schneider v Schneider, 17 N.Y.2d 123, 127-128; Sheets v Sheets, 22 AD2d 176, 178; Matter of Fence v Fence, 64 Misc 2d 480, 483-484 [POLIER, J.]; see, generally, Arbitration  Alimony  Support  Custody, Ann., 18 ALR 3d 1264; Domke, Commercial Arbitration, § 13.09, pp 128-129).
Key to the analysis is that the freedom to contract in exclusively private enterprises or matters does not blanket public school matters because of the governmental interests and public concerns which may be involved, however rarely that may ever be. In this case, however, it has not been shown and it does not appear that there is any restrictive policy, however derived, limiting the freedom to contract concerning staff size.
Turning directly to the issue at hand, there is a simple dichotomy. A marked distinction exists between a duty to engage in collective bargaining, and a freedom to agree to submit controversies, whether or not subject to mandatory bargaining, to arbitration. Illustrative of this dichotomy and distinction are Matter of West Irondequoit Teachers Assn. v Helsby (35 N.Y.2d 46) and Matter of Board of Educ. v Associated Teachers of Huntington (30 N.Y.2d 122, supra).
In the West Irondequoit case (supra), the court held that the Public Employment Relations Board, within its authority under article 14 of the Civil Service Law (the Taylor Law), was empowered to determine that, since class size was not a term or condition of employment, it was not subject to mandatory collective bargaining (pp 51-52). On the other hand, in the Huntington case (supra), it was held that certain terms and conditions of employment were subjects about which the board of education and its teachers were free to agree to arbitrate, without violating statute, decisional law, or public policy (p 129).
The present case involves enforcement of an agreement to arbitrate; hence, the rule of the Huntington case (supra) determines the result. It does not involve a compulsion to bargain collectively, in which event the rule of the West Irondequoit case would be applicable.
Thus, the board of education was always free to bargain *618 voluntarily about staff size and was also, therefore, free to agree to submit to arbitration disputes about staff size.
Accordingly, the order of the Appellate Division should be affirmed, without costs.
FUCHSBERG, J. (concurring).
We all agree that the arbitration of the attempted staff reduction here is prohibited neither by express provisions in any relevant statute (see Board of Educ. v Associated Teachers of Huntington, 30 N.Y.2d 122), nor by any "plain and clear" statutory language (see Syracuse Teachers Assn. v Board of Educ., 35 N.Y.2d 743, 744), and that that is so irrespective of whether the number of teachers to be maintained on staff as a result of class size specifications is bargainable or not. (See Matter of West Irondequoit Teachers Assn. v Helsby, 35 N.Y. 2d 46.) That being dispositive, I most respectfully suggest that it is a mistake for the majority to write, in restrictive tones and in vague generalities, of public policy "concerns which may be involved, however rarely that may ever be" even though "it does not appear that there is any restrictive policy" involved in this case.
The notion that courts may freely assume the role of arbiters of public policy is a very much exaggerated one. Most especially, they should avoid doing so in the face of a statutory scheme which bespeaks its own policy considerations, public policy having indeed been authoritatively defined as "found in the Constitution, the statutes or judicial records" of our State. (See Mertz v Mertz, 271 N.Y. 466, 472 [LEHMAN, J.]; 20 Am Jur 2d, Courts § 64, pp 430-431.) It can hardly be disputed that legislative concern, activity and enactment are at the heart of the sensitive and growing field of labor relations in the public sector, not only in New York, but throughout the Nation. (See City of Amsterdam v Helsby, 37 N.Y.2d 19 [concurring opn].)
Pragmatically, I also believe that the public policy pronouncements made by the majority hold out an "open sesame" of hope to those who would have the courts contravene the well-recognized statutory preference for bargaining and arbitration (Civil Service Law, § 200, subd [c]; see Matter of Associated Teachers of Huntington v Board of Educ., 33 N.Y.2d 229, 236) and will but encourage proliferation of litigation rather than composition of differences in public employment disputes.
Order affirmed.