George J. Aspland, J.
Petitioner, Brookhaven-Comsewogue Union Free School District, hereinafter "District”, pursuant to CPLR article 75, has made application for judgment staying arbitration of a certain alleged grievance instituted by respondent, Port Jefferson Station Teachers Association, hereinafter "Association”.
The grievance procedure was invoked by the Association *621 under an agreement between the parties dated July 1, 1973, which, in pertinent part, is still in force and effect.
The alleged grievance complained of is that the District, in reducing the number of "specialist teachers”, violated the terms of article XXXIII thereof which provides, in substance, that the number of specialist teachers shall not be decreased unless there is a decrease in enrollment.
The first budget submitted for the 1975-1976 school year abolished one special service teaching position. This budget was resoundingly defeated by the voters of the District by a nearly three to one margin at the annual meeting held on June 18, 1975. In an effort to achieve further economies and win voter approval, the board prepared and submitted a second budget in which the positions of certain additional specialist teachers were also abolished.
In consequence thereof, and in pursuance of the agreement, the Association initiated a grievance procedure. Unable to resolve the matter at levels "1” and "2” of . the grievance procedure, the Association served a demand for arbitration as provided at level "3”.
The position taken by the District is that the relief sought by petitioner, to wit: the restoration of teaching positions which, it says, have been abolished by it in good faith and for reasons of economy only, is, as a matter of law, outside the scope of the arbitrator’s authority. In short, the District contends, it is an act which is prohibited by law, and thus inarbitrable.
The Association, on the other hand, does not dispute that the ultimate power to create or abolish position lies with the District. However, the Association urges, the mere fact that the District possesses this power does not prevent it from entering into a valid agreement as to how the power may be exercised. This is a question that is a proper subject for arbitration, they say.
The particular provision of the agreement which gives rise to the controversy at bar (art XXXIII) reads as follows: "SPECIALIST SERVICES — The Association and the Board recognize that an adequate number of competent specialists is essential to the operation of an effective educational program. In consideration of this, both parties agree that every effort should be made to provide the District with the necessary specialists. There shall be no reduction in the number of *622 specialist teachers employed by the School District during this contract, provided there is no decrease in enrollment.”
Other pertinent provisions are paragraph "(9)” Definitions, under the Preamble, which reads as follows: " 'Grievance’ means a claim based upon an event(s) or condition(s) which affects the welfare and/or terms and conditions of employment of a teacher or group of teachers and/or the interpretation, meaning or application of any of the provisions of this Agreement or any subsequent Agreement entered into pursuant to this Agreement” and article XX, Miscellaneous Provisions, paragraph "D”, as follows: "If any provisions of this Agreement or any application of the Agreement to any teacher or group of teachers shall be found contrary to law, then such provision or application shall not be deemed valid and subsisting except to the extent permitted by law, but all other provisions or applications shall continue in full force and effect.” Section 200 et seq. of the Civil Service Law, commonly known as the Taylor Law, authorizes collective bargaining agreements for public employees including school teachers. Subdivision 2 of section 204 of this law requires the public employer: "to negotiate collectively with such employee organization in the determination of, and administration of grievances arising under, the terms and conditions of employment of the public employees as provided in this article, and to negotiate and enter into written agreements with such employee organizations in determining such terms and conditions of employment.”
Summarizing this latter provision, Chief Judge Fuld, in the majority opinion in Board of Educ. v Associated Teachers of Huntington (30 NY2d 122, 127), said: "In other words, the validity of a provision found in a collective agreement negotiated by a public employer turns upon whether it constitutes a term or condition of employment. If it does, then, the public employer must negotiate as to such term or condition and, upon reaching an understanding, must incorporate it into the collective agreement unless some statutory provision circumscribes its power to do so.”
Some recent decisions in this judicial department seem to support petitioner’s position that reduction in the number of teaching personnel is the exclusive prerogative of the employer and is not a proper subject for arbitration. (Matter of Lippmann v Delaney, 48 AD2d 913; Matter of Burke [Bowen], 49 AD2d 904; Matter of Carmel Cent. School Dist. [Carmel *623 Teachers Assn.], 76 Misc 2d 63; Matter of Schwab v Bowen, 80 Misc 2d 763.)
However that may be, a most recent pronouncement from the Court of Appeals in Matter of Susquehanna Val. Cent. School Dist. at Conklin (Susquehanna Val. Teachers’ Assn.) (37 NY2d 614) would seem to resolve any doubt about the question, insofar as the matter at bar is concerned.
In Susquehanna (supra), as in the instant case, the collective bargaining agreement contained a provision in which staff size was stabilized at a certain level. The Appellate Division, Third Department (45 AD2d 911), had affirmed an order of Special Term, Broome County, directing the parties to proceed to arbitration. The Court of Appeals, in affirming the orders of the courts below, said that: (p 617) "it does not appear there is any restrictive policy, however derived, limiting the freedom to contract concerning staff size.” The court then went on to say (pp 617-618):
"Turning directly to the issue at hand, there is a simple dichotomy. A marked distinction exists between a duty to engage in collective bargaining, and a freedom to agree to submit controversies, whether or not subject to mandatory bargaining, to arbitration. Illustrative of this dichotomy and distinction are Matter of West Irondequoit Teachers Assn. v Helsby (35 NY2d 46) and Matter of Board of Educ. v Associated Teachers of Huntington (30 NY2d 122, supra).
"In the West Irondequoit case (supra), the court held that the Public Employment Relations Board, within its authority under article 14 of the Civil Service Law (the Taylor Law), was empowered to determine that, since class size was not a term or condition of employment, it was not subject to mandatory collective bargaining (pp 51-52). On the other hand, in the Huntington case (supra), it was held that certain terms and conditions of employment were subjects about which the board of education and its teachers were free to agree to arbitrate, without violating statute, decisional law, or public policy (p 129).
"The present case involves enforcement of an agreement to arbitrate; hence, the rule of the Huntington case (supra) determines the result. It does not involve a compulsion to bargain collectively, in which event the rule of the West Irondequoit case would be applicable.
"Thus, the board of education was always free to bargain *624 voluntarily about staff size and was also, therefore, free to agree to submit to arbitration disputes about staff size.”
The rationale of Susquehanna seems to be: 1. Staff size is not a term or condition of employment. Consequently, a public employer (school district) is not mandated to bargain collectively concerning that subject. 2. However, if the public employer voluntarily agrees to bargain about staff size, then in that event, disputes concerning staff size become proper subjects for grievance procedure complaints, including arbitration.
The court also gave recognition to the principle that collective bargaining is not permissible in certain areas, e.g., where it would be violative of a statute. Concededly, in the matter at bar, no statute is being violated. The Court of Appeals also observed that public policy considerations might also restrict the right to arbitrate, saying (p 617):
“Public policy, whether derived from, and whether explicit or implicit in statute or decisional law, or in neither, may also restrict the freedom to arbitrate.”
However, said the court (p 617): "it has not been shown and it does not appear that there is any restrictive policy, however derived, limiting the freedom to contract concerning staff size.”
. If the Court of Appeals could find no ground for holding there was any restrictive policy against arbitration in the Susquehanna case, there would seem to be even less ground for asserting the existence of it in the matter in controversy. Keep in mind that the provision in dispute only relates to a segment of the entire teaching personnel, i. e., "specialist teachers”, and not to the entire teaching staff. Hence, it would seem, with respect to the instant case, you could rightly say with even greater emphasis that no "restrictive policy however derived” has been shown. Article XXXIII does not rise to the level of a public policy question that would constitute a bar to arbitration, in this court’s judgment.
It may very well be that if petitioner had declined to negotiate with respect to this particular provision, that PERB may have sustained its position, as it did for the school district in Matter of West Irondequoit Teachers Assn. v Helsby (35 NY2d 46).
This court is not unmindful of the budgetary woes confronting petitioner in its efforts to put together a budget that will win voter approval. If budget cuts must be made, however, *625 petitioner must look elsewhere. In the spirit of offering some helpful advice perhaps, the court suggests that the proper remedy for petitioner to pursue might be to seek an amendment under the provisions for amendment in the agreement (art II, par "B”) by modifying or eliminating article XXXIII. However, any determination this court now makes must be predicated upon that article as it now reads.
This court holds, therefore, that the alleged violation of article XXXIII presents a proper question for a grievance complaint, including arbitration.
Accordingly the petition will be dismissed, the parties will be directed to proceed to arbitration without undue delay and the stay contained in the order to show cause dated August 12, 1975 will be vacated.