J. Robert Lynch, J.
By CPLR article 78 proceeding, the petitioner, the bargaining unit for certain employees of the respondent board of education (Board), seeks to annul as contrary to law a determination of the respondent Public Employment Relations Board (PERB) which, in effect, permitted the Board to unilaterally alter the composition of the bargaining unit during the statutory challenge period.
The Public Employees’ Fair Employment Act, popularly known as the Taylor Law (Civil Service Law, art 14), provides that a public employer may voluntarily recognize the existence of a bargaining unit for some or all of its employees. Under this authority the Board on July 1, 1973 recognized the petitioner as the bargaining unit for all of its regularly employed certificated personnel except principals and casual employees and entered into a collective bargaining agreement that terminated on June 30, 1975. A successor agreement was entered into for the period July 1, 1975 through June 30, 1976. This gave the petitioner "unchallenged representation status until seven months prior to the expiration” of this agreement (Civil Service Law, § 208, subd 2).
*818 At a time when the petitioner’s status had become challengeable, on November 18, 1975, the Board passed a resolution which redefined its recognition of the bargaining unit to exclude therefrom certain categories of employees. It was the general sense of the resolution to include in the bargaining unit all regularly employed teachers under a broad definition and exclude all other employees.
The Board did not bargain with the petitioner to reach the resolution and after its passage did not accede to the petitioner’s request to reconsider or rescind this unilateral action. The petitioner then filed an improper practice charge with PERB alleging that the Board’s unilateral action was a violation of the Taylor Law, specifically section 209-a (subd 1, pars [a], [b], [d]) of the Civil Service Law.
Inter alia, the charge alleged that the Board took its action "for the purpose of depriving” the excluded "public employees in the exercise of their rights guaranteed in Section 202 of the Act for the purpose of depriving them of such rights”. It seems to us that were this motivation established by proof it would constitute animus on the part of the Board. However, PERB’s acting director of public employment practices and representation, to whom the petitioner’s charge was addressed, for some reason not made apparent in the papers, took it upon himself to limit the issues, and in limiting them excised the allegation of the Board’s motivation in passing the resolution.
The acting director stated the issues to be: "first, whether or not an employer’s unilateral alteration of a bargaining unit during the appropriate challenge period constitutes a violation of the above referred to paragraphs of the Act and, second, whether or not a refusal thereafter to negotiate such alteration constitutes a violation of those paragraphs of the act”. Having excised the allegation of animus, the acting director then stated, "the charge does not contain any allegation of animus on the respondent’s part concerning its motivation for the passage of the Resolution; rather, it challenges the resolution itself’. He also stated, "this element — animus — is necessary to establish a violation of § 209-a.l(a) or (b) of the Act”. (In its confirmatory decision PERB itself concedes that allegations of animus would have raised questions for a hearing.) The acting director then determined as a matter of law and without a hearing that the charge as limited did not constitute a violation of the statute.
*819 From that point on, including this proceeding, the petitioner has not raised the excision of its allegation of animus. It has been content to raise only the argument that the determination on the limited charge was contrary to law and we, therefore, limit our decision to that aspect only.
The petitioner then appealed to PERB from the decision of the acting director. It asserted "that the scope and composition of a bargaining unit is a mandatory subject of bargaining and where, as here, the respondent unilaterally alters said bargaining unit it is a violation of Sections 209-a.l(a) and (b) of the Act”. Inherent in this assertion is its argument that "the scope and composition of a recognized collective bargaining unit is a term and condition of employment within the meaning of Section 204(2) of the Act,” and, therefore, the "existing bargaining relationship should not be altered without prior bargaining in good faith”. In so arguing it attempted to analogize the prohibition of withdrawing, without bargaining, recognition of a voluntarily recognized bargaining unit in the private employment sector, and, while it conceded that the public employer’s initial recognition is and should be voluntary, it contends that the law precludes a subsequent voluntary alteration of that recognition.
PERB concluded that the acting director had "properly stated and applied the Taylor Law”. In so doing, it stamped its approval on four findings of the acting director: "that the passage of the Resolution does not, per se, constitute a refusal to negotiate in good faith”; that whether a particular job title "is or should be included in a negotiating unit is a permissive rather than a mandatory subject of negotiations”; that the "inclusion of a recognition clause in an existent contract does not enlarge the scope of mandatory negotiations or impose upon the respondent an obligation to either rescind its resolution or negotiate with the charging party concerning the changes made”; that, if an employer during the challenge period alters a bargaining unit it had voluntarily established by recognition, the remedy, if any, lies in a timely filed representation petition.
The PERB decision went on to state that the Taylor Act was expressly and significantly different from the laws governing employment in the private sector, particularly, that for an improper employer practice, other than the refusal to negotiate in good faith, animus is an essential element in both pleading and proof. In summary PERB’s decision was that *820 negotiations were not required, that animus was not pleaded and that the respondent’s "unilateral action raises no question under the Taylor Law”.
In its petition on this article 78 proceeding, the petitioner asserts that PERB’s decision is contrary to law because it permits the Board to unilaterally alter the composition of the bargaining unit, a term and condition of employment, and that it permits it to do so without prior good faith bargaining. The petitioner contends that this is violative of section 209-a (subd 1, pars [a], [b], [d]) of the Civil Service Law.
In answer, both respondents rest on the rationale of the PERB decision. Additionally the Board pleads various affirmative defenses.
It contends that this petition was not timely under CPLR 217 in that four months had passed since the resolution was adopted on November 18, 1975. This defense has no merit. The petition does not seek to review the decision of the Board represented by the resolution. It seeks to review the decision of PERB that the improper practice charge is not cognizable under the Taylor Act (see Civil Service Law, § 213, subd [e]). PERB’s decision was dated August 10. The affidavit attached to the petition shows -service on September 10 and 9 respectively. Service was timely.
By another affirmative defense the Board alleges that the agreement between it and the petitioner constitutes a waiver of the right to negotiate the composition of the bargaining unit even if this be held a term or condition of employment. The language of the agreement quoted by the Board is a two-edged sword. If the composition of the bargaining unit is a term or condition of employment, then, by the very language urged by the Board, it could not alter the composition except by mutual consent. Be that as it may, the right to negotiate terms and conditions of employment is a statutory imperative (Civil Service Law, § 204) that is beyond the power of the parties to modify by agreement (Matter of Union Free School Dist. v Nyquist, 38 NY2d 137, 144).
If we interpret another affirmative defense of the Board correctly, it asserts that this article 78 proceeding should be dismissed because the petitioner has other remedies available. Presumably this means that the petitioner could have filed a timely representation petition rather than to proceed as it did by filing an improper practice charge. We assume that had we been given citations to support the defense they would have *821 cited the accepted principle that article 78 will not lie unless the administrative remedy is exhausted. We hold this defense ineffective. The petitioner here has exhausted the administrative remedy it elected. The principle does not require, as a precedent to article 78, that every possible administrative option be exercised. It is sufficient that there can be no further administrative challenge to the determination sought to be reviewed (CPLR 7801, subd 1).
At issue here is the legality of PERB’s interpretation of the Civil Service Law that the Board’s acts did not, as a matter of law, constitute improper employer practices. The Court of Appeals has made a holding that both defines our duty and also answers the petitioner’s attempted analogy with employment in the private sector. "So long as PERB’s interpretation is legally permissible and so long as there is no breach of constitutional rights and protections, the courts have no power to substitute another interpretation on the strength of what the NLRB or the Federal courts might do in the same or a similar situation” (Matter of West Irondequoit Teachers Assn. v Helsby, 35 NY2d 46, 50). In this perspective, was it legal to conclude that a unilateral alteration of the composition of a bargaining unit by a public employer during the challenge period did not, in and of itself, constitute: an interference with public employees for the purpose of depriving them of their rights (Civil Service Law, § 209-a, subd 1, par [a] ); an interference with the formation or administration of an employee organization for the purpose of depriving employees of their rights (Civil Service Law, § 209-a, subd 1, par [b] )? Was it legal to conclude that the failure of the Board to negotiate this alteration did not constitute a refusal to negotiate in good faith with the recognized representative of the public employees (Civil Service Law, § 209-a, subd 1, par [d])?
The PERB decision, in holding that the respondent’s unilateral action raised no question under the Taylor Act, cited Matter of Civil Serv. Employees Assn. v New York State Public Employment Relations Bd. (65 Misc 2d 544). The sustenance given by that holding was taken away on appeal by the Appellate Division which held that the question of the unilateral revision of the negotiating unit was not properly a part of the determination of the court below (39 AD2d 971). Nonetheless, motive is an expressed integral part of both paragraphs (a) and (b) of subdivision 1 of section 209-a of the Civil Service Law. In neither instance can the action in and of itself *822 constitute a violation. A sine qua non is the purpose for which the act was taken. It must have been improperly motivated. Since the charge, as limited by the acting director without objection then or since, contains no allegation of animus, we find that PERB’s decision, as it relates to improper charges under paragraphs (a) and (b), was legally valid.
The acting director rejected the possibility that the Board had violated section 209-a (subd 1, par [d]) of the Civil Service Law because he determined that redefinition of a bargaining unit did not involve a term or condition of employment. The PERB decision accepted this rationale, by implication only, when it held that the acting director had properly stated and applied the law. Its decision seems to accept unilateral redefinition as properly authorized by sections 204 and 208 of the Civil Service Law, suggesting that the petitioner’s remedy is to seek recertification. Again it appeared to be leaning on Matter of Civil Serv. Employees Assn. v New York State Public Employment Relations Bd. (supra) but, as we have seen, the ultimate determination there neither sanctions nor condemns unilateral redefinitions. Neither is it compelling that the petitioner had another remedy. Merely because a bargaining unit has another way to overturn actions that result in a loss of recognition does not lead inexorably to the conclusion that those actions are not improper employer practices.
The petitioner contends that section 209-a (subd 1, par [d]) is violated when an employer unilaterally redefines a bargaining unit to exclude some employees. But this cannot be. The impropriety defined in paragraph (d) is the refusal to negotiate, and there can be no improper refusal unless there is a necessity to negotiate. Even a concession that the Board had no authority to redefine the bargaining unit would not of itself prove that redefinition is a mandatory subject for bargaining.
Negotiation is mandated for terms and conditions of employment (Civil Service Law, § 204, subd 2), that is, "salaries, wages, hours and other terms and conditions of employment” (Civil Service Law, § 201, subd 4). In their review of the propriety of PERB’s interpretation of what is or is not a term and condition of employment, the courts have granted PERB broad discretion (Matter of West Irondequoit Teachers Assn. v Helsby, 35 NY2d 46, supra; Matter of City of Albany v Helsby, 48 AD2d 998, affd 38 NY2d 778).
In determining a mandatory subject for bargaining the *823 courts have drawn the distinction between a decision which in effect changes hours, wages and conditions of employment and a basic policy decision that does not touch hours, wages and conditions of employment. The former must be reached through negotiation; the latter need not be negotiated (Matter of City of Albany v Helsby 48 AD2d 998, affd 38 NY2d 778, supra; Matter of City School Dist. of City of Oswego v Helsby; 42 AD2d 262; Matter of Lippmann v Delaney, 48 AD2d 913). In essence, PERB’s finding here is that a bargaining unit exists for the purpose of seeking favorable terms and conditions of employment (see Civil Service Law, § 201, subd 5) and that questions relating to the existence or composition of the bargaining unit do not of themselves reach the status of relating to terms and conditions of employment. We find this to be a reasonable, commonsense distinction. This is as it should be because the Taylor Act seeks to protect the rights of the public, the public employer and the public employees (Civil Service Law, § 200). It does not seek to protect bargaining units in matters divorced from the rights of its employee members.
The petitioner concedes that the initial recognition of a bargaining unit "involves a decision as to the basic mission of a public employer” and that it is supported by section 207 of the Civil Service Law. The petitioner has shown no persuasive reason why the same statutory elements of the basic mission are not involved in a reconsideration of recognition. We deem the Legislature’s provision of a challenge period, made applicable to bargaining units established by voluntary recognition, to be a grant to the employer of the right to review periodically whether the bargaining unit continues to meet the criteria that persuaded the grant of recognition in the first place. To force the Board to be forever bound to an initial recognition voluntarily given, unless there be negotiations on the point, would deprive it of this statutorily granted, basic policy right for reasons that might have no bearing on the terms and conditions of employment of those who work for it.
The petition must be denied.