■ In the Matter of the Arbitration between BOARD OF EDUCATION, GREAT NECK UNION FREE SCHOOL DISTRICT, Respondent, and GREAT NECK TEACHERS ASSOCIATION, Appellant.—In a proceeding to vacate an arbitration award, the appeal is from an order of the Supreme Court, Nassau County, dated June 4, 1976, which granted the petition and vacated the arbitration award. Order reversed, on the law, with $50 costs and disbursements; application to vacate the award denied and the award is confirmed. Renewed motion by petitioner to dismiss the appeal on the ground it is academic, denied. Prior to the 1966–1967 school year all secondary school English teachers in the Great Neck Union Free School District (District) were assigned five periods of group instruction per day. In September, 1966 the District began assigning high school English teachers to four periods of group instruction and one student conference period per day. This program was extended during the 1968–1969 school year to include junior high school English teachers. The policy was still in effect in 1973 when the District and the Great Neck Teachers Association (the Association) entered into collective bargaining negotiations which culminated in an agreement effective July 1, 1973 through June 30, 1976. Article 3 (§ C, subd 7) of the agreement provided that "Policies currently in existence or those which come into existence as part of this Agreement affecting wages, hours and other terms and conditions of professional service shall remain in effect until altered by mutual agreement between the parties in writing." In April, 1975 the District unilaterally determined that all English teachers would be assigned five periods of group instruction, effective September 1, 1975. The elimination of the student conference period was made for budgetary reasons. By eliminating the student conference period, during which an English teacher

would see 5 or 6 students instead of the 24–27 students normally involved in a group assignment, the District was able to reduce the number of English teachers on the faculty. On June 4, 1975 the Association initiated a formal grievance proceeding, alleging that elimination of the student conference period and restoration of five group assignments violated the collective bargaining agreement in that the mutual agreement of the District and the Association was required before any existing policies could be changed. The grievance proceeded to arbitration and the arbitrator determined that the District's unilateral decision to assign secondary school English teachers to five periods of group instruction for budgetary reasons violated the agreement. Special Term vacated the arbitration award, concluding that teaching assignments are matters of educational policy which are within the exclusive province of the District and are nondelegable pursuant to subdivision 33 of section 1709 of the Education Law. Special Term further determined that the issue of teaching assignments was not covered by the agreement and that the arbitrator therefore had exceeded his powers. Subsequent to Special Term's determination, the parties concluded negotiations and executed a collective bargaining agreement to be effective from July 1, 1976 through June 30, 1978. This agreement provides that: "Teachers of English in the secondary schools shall be assigned a teaching schedule of no more than four subject classes and one student conference period each day" (art 15, § B, subd 6, par i). Since this new section provides exactly the same relief as the arbitrator's award, the District contends that no controversy remains and that the appeal should be dismissed as moot. In our opinion the issue is not moot. If Special Term's decision is permitted to stand, the new section in the agreement is as unenforceable as the disputed clause in the expired agreement. Whether an agreement concerning teaching assignments is enforceable at arbitration continues to be a matter of concern not only to the parties before the court, but to all teacher unions and school districts in the State engaged in collective bargaining. An appeal is not moot where it involves a controversy which is likely to recur, not only with respect to the parties before the court, but with respect to others as well (*East Meadow Community Concerts Assn. v Board of Educ.,* 18 NY2d 129, 135; *Matter of Jones v Berman,* 37 NY2d 42, 57). It is already a well-settled rule that a school district is not prohibited under subdivision 33 of section 1709 of the Education Law from entering into an agreement to arbitrate matters affecting the conditions of a teacher's employment, i.e., staff level, teacher load and class size (see *Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers' Assn.],* 37 NY2d 614; *Matter of Board of Educ. v Ardsley Congress of Teachers,* 51 AD2d 537). The major argument urged on appeal is that there was no agreement to submit questions concerning teaching assignments to arbitration. The District relies on article 37 of the agreement, which states, in part: "If special situations exist which provide superior conditions in an individual school, department, program or individual teacher's schedule, to those which generally prevail throughout the district, nothing in this contract shall prevent a return to the generally prevailing conditions in other similar situations." The District contends that the assignment of secondary school English teachers to four periods of group instruction and one student conference period per day was a special situation which it could unilaterally change. The Association relies on article 3 (§ C, subd 7), set forth above, which states that policies currently in existence shall remain in effect until altered by mutual agreement. The Association asserts that the assignment of English teachers to four periods of group instruction and one student conference period per day was an

existing policy which could only be changed by mutual agreement. The conclusion of the arbitrator, that there was an agreement to arbitrate questions of teaching assignments, involved an interpretation of the agreement which was neither illogical nor irrational, and therefore the arbitrator's award should not have been vacated (see *Lentine v Fundaro,* 29 NY2d 382). The strong public policy favoring the resolution by arbitration of disputes between public employers and employee organizations requires that the decision at Special Term be reversed and the arbitrator's award reinstated (see *Board of Educ. v Associated Teachers of Huntington,* 30 NY2d 122). Rabin, Acting P. J., Shapiro, Titone and O'Connor, JJ., concur.