OPINION OF THE COURT
Nicholas Colabella, J.
In a proceeding pursuant to CPLR article 78, petitioners seek a declaration annulling contracts awarded by the County Executive and the Board of Acquisitions and Contracts to respondents Integrated Systems Solutions Corporation (hereafter ISSC) and Marriott Management Services Corporation (hereafter Marriott), injunctive relief enjoining the implementation of the contracts, a declaration that the transfer of functions and the abolition of County positions are invalid, and reinstatement of County employees represented by petitioners to their former positions with back pay and benefits. The Board of Legislators cross-claim for a declaration that the subject contracts were improperly awarded, that the transfer of functions and abolition of County positions were invalid and that the line-item veto by the County Executive with respect to certain mandates and limitations in the County budget was improper.[1]
The first cause of action of the petition and the fourth cross claim by the Board of Legislators, insofar as they seek declarative relief as to the validity of the contracts with ISSC *464 and Marriott, are granted to the extent it is declared that the contracts with ISSC and Marriott are invalid due to lack of appropriations for the contracts.
County Law § 362 (3) prohibits expenditures or contracts which involve "the expenditure of money or the incurring of any pecuniary liability * * * unless an amount has been appropriated and is available therefor”. Westchester County Charter § 167.161 further prohibits expenditures or contracts for expenditures "for any purpose in excess of the amounts appropriated for that general classification of expenditure in the appropriation act for such fiscal year or in supplementary appropriation acts as hereinafter provided, or, in excess of funds made available therefor”. The price for ISSC’s services in this case is in excess of $11 million for 1997 and approximately $84 million over a seven-year term. The contract with Marriott for dietary services at the Westchester County Medical Center (hereafter WCMC) and the Ruth Taylor Institute (hereafter RTI) is $1,664,127. The County Executive anticipates paying for the contracts through a combination of transferring moneys within the affected departments within the general expenses classification and, to the extent there is a shortfall, billing or charging back other departments using the services in question. The charge-backs would ostensibly be paid for from savings within the various departments. According to the County Executive, there would be no need under this scheme for transfers between classifications or departments.[2]
The court finds that the County Executive has failed to demonstrate a source of sufficient available funding for the ISSC and Marriott contracts. Absent such funding, the contracts are in violation of County Law § 362 (3) and Westchester County Charter § 167.161.
Assuming, arguendo, that the County Executive has discretion to move funds within a general classification, the court nonetheless rejects the contention of the County Executive that he may transfer money within the general expenses classification within the same department to pay for the subject contracts. Transfers of funds are governed by Westchester County Charter § 167.121 — captioned "Transfer of appropria *465 tions, etc.” — which provides that: "[n]o money shall be spent by the county or any agency thereof, nor shall any obligation for the spending of money be incurred, unless in pursuance of the annual appropriation act therefor, except as provided in this section. Transfers of appropriations between general classifications of expenditures within the same department may be authorized by the County Executive on the recommendation of the Budget Director and with the approval of a committee of the County Board, designated by resolution of such Board. Transfers between departments may be authorized by the County Board on the recommendation of the County Executive.”
Transfers of money within a general classification within a department, therefore, are only legal if done in pursuance of the Appropriations Act. Section 2 of the Appropriations Act here provides, in pertinent part, that the "amounts specified in the Budget under the column heading 'Allowed 1997’ or so much of such amount as shall be sufficient to accomplish the purposes designated are hereby appropriated for such purposes under the following general classifications: * * * Expenses (Code 4 and 5) [emphasis added].” The "purposes designated”, i.e., the purposes for which appropriations are made, are the categories or line items within the general classification for which moneys are allowed. The designated purposes in the budget clearly did not include the use of appropriations within the general expenses classification for the privatization contracts since the Board of Legislators specifically deleted the line-item appropriation in the County Executive’s proposed budget for such contractual services. To permit funds within a general classification, appropriated for a designated purpose, to be used for a purpose that has been expressly disapproved would be inconsistent with the Appropriations Act and make the designations in the budget meaningless.[3]
*466 Such a result is also inimical to the budget process. As discussed below, the County Executive is limited under Westchester County Charter § 167.101 to vetoing additions to his proposed budget. By allowing the County Executive to use funds for a disapproved purpose, the County Executive would be able to achieve indirectly what he cannot do by veto — override a deletion from the proposed budget.[4] The attempt by the County Executive in this case to do just that is a usurpation of the powers of the legislative branch.[5]
The second and third causes of action of the petition and the third and fifth cross claims by the Board of Legislators, insofar as they seek declarative relief with respect to the abolition of positions, are granted to the extent it is declared that the positions were lawfully abolished by the adoption of the budget by the Board of Legislators on December 20, 1996 and approved by the County Executive on December 23, 1996.
County Law § 204 empowers the Board of Legislators to establish and abolish positions of employment by local law, resolution or by the adoption of a budget (Torre v County of Nassau, 86 NY2d 421; Poillucci v Pattison, 95 AD2d 288, supra). Westchester County Charter § 107.21 (1) further provides that the Board of Legislators shall have the power to "create, organize, alter or abolish departments, commissions, boards, bureaus, offices and employments”. The County Executive, as the chief executive and administrative officer of the County, has the power to supervise, direct and control the administrative services and departments of the County: a responsibility he exercises by his involvement in the budgetary process as well as administration of the County budget once adopted *467 (Westchester County Charter § 110.11). The powers of both the Board of Legislators and the County Executive are subject to the provisions governing the enactment of a budget (see, Westchester County Charter § 107.21 [1], [4]; ch 167).
In accordance with the foregoing, the County Executive submitted his proposed 1997 budget to the Board, accompanied by a budget message, Appropriations Act and Tax Levy Act in which he proposed the elimination of 109 positions from the Department of General Services and the appropriation of funds to contract with a private vendor. With respect to the Department of Hospitals, the County Executive proposed the elimination of 94 dietary services positions at WCMC and 73 dietary services positions at RTI. The Board of Legislators, in turn, on December 13, 1996, added the positions to the proposed budget, added sufficient appropriations for the restored positions and deleted the appropriations provided by the County Executive for the privatization of the data processing and telecommunications services and for dietary services. The County Executive line item vetoed the additions for the data processing and dietary services positions, along with the salary appropriations associated with the positions. Lacking the two-thirds vote necessary to override the County Executive veto and restore the positions to the 1997 County budget, the Board of Legislators adopted the budget in that form, effectively abolishing the positions by the adoption of the budget as allowed in County Law § 204.
The court rejects the argument by petitioners that a local law was required to abolish positions. This argument is based on the premise that since the Department of General Services was established by local law, the abolition of positions within the Department likewise requires an equal legislative act. The argument fails because the Department of General Services is not being abolished and the abolition of positions within the Department is not the equivalent of the abolition of the Department. Moreover, since the specific positions had been created and/or continued through the budgets in prior years, the abolition of those positions in the 1997 budget was a correlative legislative act (Torre v County of Nassau, supra, at 426).[6]
The court rejects the argument by the Board of Legislators that the County Executive acted improperly in submitting *468 a proposed budget abolishing the positions. Westchester County-Charter § 167.71 mandates that the County Executive establish a fiscal policy for County government. The submission of a proposed budget, privatizing certain government functions in order to effectuate cost savings, was consistent with that mandate.
The court also rejects the argument by the Board of Legislators that "restoration” of the positions was not an "addition” to the budget. The characterization is belied by the December 2, 1996 report of the Committee on Budget and Appropriations, which listed the restoration of these positions as "Additions to the Budget”, and by the failed attempt of some members of the Board of Legislators to override the County Executive’s veto of those additions. Further, the Board of Legislators throughout its answer admits that the inclusion of salaries and lines for dietary services at the Westchester County Medical Center and the Ruth Taylor Institute and the positions for data processing and communication services in the Department of General Services constituted additions to the proposed budget.[7]
Inasmuch as petitioners’ positions were lawfully abolished by the budget adopted in accordance with the laws of Westchester County governing the budgetary process, petitioners are not entitled to reinstatement. There is also no credible evidence to support petitioners’ charge that the abolition of positions was otherwise done in bad faith or to circumvent the Civil Service Law (Matter of Shields v Dinga, 222 AD2d 816).[8]
The second cause of action of the petition and the first and second cross claims by the Board of Legislators, insofar as they seek a declaration as to the validity of the transfer of functions to ISSC and Marriott, are granted to the extent it is declared that the transfer of functions, without the Board of Legislators’ approval, is invalid.
*469 Westchester County Charter § 107.21 (1) vests the Board of Legislators with the authority to transfer the functions of departments (Matter of Lippmann v Delaney, 48 AD2d 913, 914). Any transfer of functions, therefore, required the approval of the Board of Legislators. In determining whether the subject contracts constituted the transfer of government functions, the court must apply the normal and customary meaning of such terms. As relevant, "transfer” is defined in Funk & Wagnalls New Comprehensive International Dictionary of the English Language (encyclopedic ed) as "to carry, or cause to pass from one person, place etc. to another.” As relevant, "function” is defined therein as "[t]he specific, natural or proper action that belongs to an agent” or "[o]ne’s appropriate or assigned business, duty, part, or office.”
As applied in this case, the data processing and communications services performed by the Information Services Division were functions of the Department of General Services and the outsourcing of those functions to ISSC was a transfer of those functions. The contract with ISSC now provides that such services will be substantially, if not entirely, provided by ISSC. Page 1, § 1.1 states: "The county has determined that it can best meet its requirements for mainframe and midrange data processing, telecommunications services, desktop and server services, applications maintenance and development, disaster recovery and certain other information services by retaining an entity skilled and expert in these functions and to assign to that entity the responsibility for those functions [emphasis added].”[9]
Despite the necessity for approval of the transfer of functions, the County Executive failed to obtain approval from the Board of Legislators. The Board of Legislators, in fact, effectively disapproved such a transfer during the budget process on December 13, 1996 when the Board of Legislators restored County employee lines and deleted appropriations for the privatization contracts.[10]
*470 The County Executive’s argument, that retention of some related data processing and communications functions vitiates the need for the Board of Legislators’ approval to transfer other functions, is untenable in that again it would enable the executive branch to indirectly accomplish what it cannot directly do. Such an argument offends both the spirit and letter of the Westchester County Charter’s delineation of the powers and duties of the executive and legislative branches of government.
The privatization of dietary services similarly required approval of the Board of Legislators since under the Marriott contract, the function, formerly performed by the County, of providing dietary services at WCMC and RTI was being transferred to Marriott. Contrary to the position of the County Executive, the dietary services are not "merely being carried out by other employees.”* [11] The employees of a private vendor are not the employees of the County and are not under the control of the County.
The fourth cause of action of the petition, which seeks a declaration as to the validity of an emergency contract with Marriott, is granted to the extent the contract is declared invalid due to the absence of a bona fide emergency at the time it was awarded.
General Municipal Law § 103 provides that "[a] contract for public work [in excess of $20,000 is to] be awarded * * * to the lowest responsible bidder * * * after advertisement for sealed bids”. The award of such a contract without competitive bidding raises a presumption of waste (Gerzof v Sweeney, 16 NY2d 206, 208). An exception is allowed in the case of an unforeseen emergency (General Municipal Law § 103 [4]). "An occurrence or condition is unforeseen when it is not anticipated; when it creates a situation which cannot be remedied by the exercise of reasonable care * * * when it is fortuitous” (Rodin v Director of Purch. of Town of Hempstead, 38 Misc 2d 362, 364-365; see also, Grimm v City of Troy, 60 Misc 2d 579, 582). The so-called emergency in this case was not unforeseen or unavoidable, but was knowingly created when the County Executive vetoed the appropriations added to the budget by the Board of Legislators for continuation of computer and dietary services by the County without appropriations for outsourcing the ser *471 vices and the Board of Legislators failed to override the vetoes. Competitive bidding, therefore, was required.[12]
The court recognizes that a crisis nonetheless exists as the result of the declaration of the parties’ rights in this decision. It is not the province of the court, however, to direct a particular course for resolving the crisis.[13] " 'It is a fundamental principle of the organic law that each department [or branch of government] should be free from interference, in the discharge of its particular duties’ ” (Saxton v Carey, 44 NY2d 545, 549). The court is limited in the circumstances at bar, therefore, to resolving the dispute concerning the scope of that authority which is granted by the Westchester County Charter to the two other branches of government (Matter of Korn v Gulotta, 72 NY2d 363, 369).
The sixth cross claim by the Board of Legislators, which seeks a declaration as to the validity of certain line-item vetoes, is granted to the extent it is declared that the line-item veto was valid, as applied, to mandates and limitations in the budget that did not involve a specific expenditure.
The mandates and limitations were untimely in that they were added to the proposed budget without first being included in the December 2, 1996 report of the Committee on Budget and Appropriations and after the period allowed for additions had expired. In addition, even if timely, the mandates and limitation were subject to being vetoed. Westchester County Charter § 167.101 (1) provides, in relevant part, that the "County Executive, within five (5) days after presentation to *472 him of a budget containing increased items, may veto any such addition or increase [emphasis added].” Nothing in section 167.101 restricts the line-item veto solely to expenditures.[14]
Petition insofar as it seeks injunctive relief is granted to the extent the County of Westchester is enjoined from proceeding with the present contracts with ISSC and Marriott without approval by the Board of Legislators of the transfer of functions and the appropriation of sufficient funds by the Board of Legislators for the contracts.

. To the extent the relief sought is improper within the context of a proceeding pursuant to CPLR article 78, the proceeding is deemed an action for declaratory judgment pursuant to CPLR 103 (c). The court further finds petitioners have standing to contest the abolition and privatization of services in that they are directly affected by the actions taken by the County Executive. The question of standing is also moot to the extent the same or similar relief is sought by the Board of Legislators.

. According to the memorandum of Susan Eggington, Administrator of General Services, $6,000,000 is charged to General Services Information Systems, $5,300,000 is charged to other departments. Although the final numbers vary, the methodology for the billings to other departments is set forth in the December 18, 1996 memorandum of Deputy County Executive Neil DeLuca.

. A similar caution was noted in Poillucci v Pattison (95 AD2d 288) in which the Court addressed an attempt by the County Legislature to avoid funding a position created through a budget. The Court observed that "[a]ll expenditures by the county government must be made in accordance with appropriations made through the budgetary process * * * The obvious intent of the framers of those statutory and regulatory provisions was to provide for consistency and finality in the budgetary process under which positions are established and funded. The clear intent would be frustrated if this court were to interpret the county charter and Administrative Code as granting authority to the County Legislature to nullify the eifect of the budgetary process by adopting salary resolutions inconsistent with the budget” (supra, at 292-293).

. Cf., Matter of Henry v Noto, 74 AD2d 604, 605 (condemning unilateral action which frustrated legislative action creating a position by effectively abolishing the position as "an illegal veto power”).

. The transfer of funds at bar are distinguished from, for example, the transfer of funds allowed in Henry (supra). The Court recognized there that "[t]o the extent that the exercise of [the County Executive’s authority to administer salary plans] may result in a minor transfer of unencumbered funds within a department, the county executive has full authority to make such a transfer, in an amount not to exceed $100,000” (supra, at 606). That holding was based on specific provisions of Suffolk County Charter § 428 and Local Laws, 1973, No. 28 of the County of Suffolk permitting such a transfer of funds. Unlike Henry, the transfer of funds in this case is substantial and without specific authority. Westchester County Charter § 167.161, cited by the County Executive, which prohibits any officer, department, board or other spending agency from spending in excess of funding within a general classification does not address, even inferentially, whether the County Executive may "transfer” moneys within a general classification for a disapproved purpose.

. The interplay of powers is illustrated in Poillucci v Pattison (95 AD2d 288, supra). As in this case, the County Legislature had the power to abolish or create positions and the County Executive had the power to propose a budget. The County Executive proposed through a budget the creation of new positions which the Legislature, in turn, deleted. The deletion was *468 vetoed by the County Executive, which unlike the case at bar the County Executive hadrthe power to do, and the Board of Legislators failed to override the veto arid adopted the budget. The Court held that the adoption of the budget was sufficient to lawfully establish the positions within the County government.

. See, verified answer of Board of Legislators, paras 45, 46, 48, 59, 60, 63, 67, 68, 70, 74.

. The challenge to the abolition of the positions is also inconsistent with the prior position of petitioners and the Board of Legislators in Civil Serv. Empls. Assn. v O’Rourke (Sup Ct, Westchester County, Dec. 31, 1996, index No. 20577/95), in which the identical process occurred and petitioners and the Board of Legislators conceded that the positions in issue were abolished.

. Those services include the development, enhancement and maintenance of information systems for some County departments; management, operation and maintenance of the mainframe, servers and desktop computers; design, operation and support of voice and data communications systems; and a help desk for County employees with questions or difficulties with computer system.

. A proposed act submitted in July 1996, which would have authorized the abolition of County positions providing data processing and related com *470 munications services, and the transfer of such services to a private vendor, was also never adopted.

. Mem, at 7.

. The argument by the County Executive, that there was no lawful alternative to a short-term emergency contract for dietary services, ignores the lawful alternative of continuing such services by the County until the completion of competitive bidding.

. There are several options available to meet the crisis including, but not limited to, reinstating the positions that were abolished. The fact, that the current crisis was foreseeable, is not a bar to such a course since foreseeability is only an issue if the bidding process is by-passed. Westchester County Charter § 167.171 (1) provides that the Board of Legislators "during a fiscal year, may make additional appropriations or increase existing appropriations to meet emergencies or unforeseen circumstances requiring action to protect the interests of the county and its citizens, the funds therefor to be provided from unappropriated revenues, if any, or made available pursuant to the Local Finances Law.” Westchester County Charter § 167.121 further provides that "Supplemental appropriations from any moneys not otherwise appropriated may be made at any time upon recommendation of the County Executive by a majority vote of all members of the County Board.” The court notes in this regard that the Board of Legislators has already passed resolutions to continue funding the subject services by the County. The Board of Legislators could, of course, also reverse its rejection of privatization.

. The court does not reach the question of whether particular mandates and limitations require a referendum.