William 0. Hecht, Jr., J.
Columbia Broadcasting System, Inc. (“ CBS ”) moves for an order staying arbitration sought by International Brotherhood of Electrical Workers and its Local 1212 (hereinafter collectively called “ the Union ”). The latter cross-moves to compel arbitration. The rights of the parties are covered by a collective bargaining agreement dated May 1,1958 (“ the Agreement ”).
Article II of the Agreement contains the arbitration provisions. It provides for a Local Union-Management Grievance Committee containing representatives of each side, which shall meet upon the request of either side to consider any questions. If agreement is not reached at such meeting, either party, before requesting arbitration, must notify the Union’s national office and CBS’ New York office of the facts at issue.
After receipt of such notice, either national party may notify the other of its desire to participate in the matter, which shall then be handled at the national level. If it is not adjusted there, either party may demand arbitration. Such demand shall be in writing, shall specify the issue in detail and shall name an arbitrator. ‘1 Where any specific grievance has been brought to the attention of CBS and the Union has not proceeded to arbitration under the provisions set out in section 2.03 for a period of 6 months subsequent to the date upon which such grievance was first brought to the attention of CBS, said grievance shall be deemed finally waived and disposed of and may not be subsequently arbitrated.”
On November 2, 1959, the Union wrote to CBS the following-letter :
Inasmuch as we have extensively explored the subject of Video Tape Recording jurisdiction with reference to the differences between us and without fruitful conclusion, please accept this letter as formal notice from the International Office of the IBEW of our desire to submit the issue/s to arbitration proceedings.
As we view this matter, an arbitration is necessary to resolve the following questions:
1. Whether CBS may sub-contract or otherwise arrange for any of the technical work involved in video tape recordings to be performed by other than its own employees, under the Agreement:
(a) Within a 200-mile radius of its owned-and-operated stations (except Los Angeles; 300 miles), or
(b) Within the continental United States, or
(e) Anywhere such recordings are made by, at the behest of and/or owned or made for CBS.
2. Whether CBS has violated the collective bargaining Agreement of May 1, 1958 in its assignments, arrangements for and administration of video tape recording, with particular reference to Sections 1.04, 1.05 and 6.01 of said Agreement.
*974 CBS contends that the Union is really complaining about seven specific grievances and that these are not subject to arbitration for various reasons. But on the instant motion, I must pass on the demand for arbitration as it is presented by the Union. If arbitration is granted, and the Union seeks an award in respect of any of these seven specific grievances, it is for the arbitrator to determine whether these items are embraced in the demand; and if so, whether they are arbitrable. That determination can be reviewed on a motion to confirm or set aside the arbitration award; it cannot be disposed of on these motions to stay and to compel arbitration.
CBS also seeks to introduce evidence as to preliminary negotiations between the parties, claiming that these shed some light on the meaning of terms in the contract which are alleged to be ambiguous. That is, likewise, not a proper issue on this motion. ‘ ‘ If, under the unambiguous terms of an agreement calling for arbitration, there has been no default, the court may not make an order compelling a party to proceed to arbitration ’ ’ (Matter of General Elec. Co. [United Elec. Radio & Mach. Workers], 300 N. Y. 262, 264; italics supplied). The very contention that an ambiguity exists, whose resolution requires resort to the preliminary negotiations, establishes that such issue must be determined by the arbitrators.
The following are the pertinent provisions of the Agreement embraced in the demand:
Section 1.04, captioned1 ‘ jurisdiction ”, provides that the work covered by the Agreement shall include all operation and maintenance connected with “ all types of recording on disc, wire, video tape, audio tape, kinescope or television recording and/or any other means of recording which may supplant, substitute for or augment the foregoing ”.
Section 1.05, captioned “ sub-contracting ”, provides: “no work covered by this Agreement shall be contracted out to any party * * * not having a collective bargaining agreement with [the Union] unless it is impossible to perform such work under this Agreement because CBS does not have the facilities for performing such work ”.
Section 6.01, captioned “field pickups ”, contains an agreement by CBS that a technician shall operate technical equipment at the point of origin of all CBS programs originating within a radius of 200 miles from the main studios of each of its stations (300 miles for stations KNX and KNXT, Los Angeles). ‘1 For the purposes of this section mileages shall be determined from Civil Aeronautics Sectional Maps of the section involved.” It was agreed that programs originating outside the Continental *975 United States need not be handled by a technician. The section also contains this significant provision: “ The Employer agrees that’ it will not use the provisions of this section as a means of evading the provisions of section 1.05 relating to sub-contracting of video tape recording.”
CBS objects to the demand because the items do not involve specific grievances, and because arbitration was not demanded within the six-month period specified for a specific grievance in section 2.01. I do not read the Agreement as confining the right to arbitration to specific grievances.
What the Union is really asking for is a declaratory judgment from the arbitrators. This is just as desirable here as in any other legal proceeding, inasmuch as it may avert constant bickering of specific grievances. This is particularly true here because of the statement of “ basic principles ” in the Agreement which reads as follows: ‘ ‘ The Employer and the Union have a common and sympathetic interest in the radio and television broadcasting business. Both parties recognize the benefits to be realized from harmonious relations between them and the advantage of peaceful and common sense adjustment of any difference. Furthermore, both parties recognize that radio and television are developing arts and that the joint interests of the Employer and the Union as representatives of Technicians covered by this Agreement require the fullest cooperation between the parties in order that the Employer may maintain and improve its position in the industry. ’ ’
It is the settled policy of our courts to encourage arbitration and to enforce arbitration agreements with a complete relief from legal technicality. “ Proceedings of this kind are equitable in character, and the practice of equity as to relief should be followed. In equity proper relief is ordinarily granted when the facts warrant regardless of what may have been asked for ” (Matter of Feuer Transp. [Local No. 445], 295 N. Y. 87, 92, per Medalie, J.).
In connection with Item 2 of the demand, the Union presumably will introduce evidence of specific grievances, in order to give the arbitrators a basis for the finding of violation by CBS which is claimed by the Union. At that time it will be for the arbitrators to decide whether any specific grievance thus presented, which occurred more than six months prior to the demand for arbitration, (a) must be completely eliminated from consideration, or (b) may be used as a basis for a declaration for future conduct, even though damages for past action are barred; or (c) maybe used as a basis for damages despite the six months’ *976 limitation, if the Union is able to prove estoppel or some other valid excuse.
All of the objections to Item 2 of the demand are overruled. As to it, the motion to stay arbitration is denied and the cross motion to compel arbitration is granted.
As to Item 1: The Agreement provides that no work covered therein may be subcontracted. The Union is clearly entitled to arbitration of subdivision (a), whether CBS may subcontract within the 200-mile radius of its owned and operated stations, which work is specifically covered by the Agreement.
As to Items (b) and (c): The Agreement provides with the same specificness that it is limited to work within 200 miles of CBS stations (300 miles in Los Angeles), and does not apply to programs originating outside of the Continental United States. The mileage provision is clear and the method of computing mileages is defined. It is equally clear that the Continental United States does not include Alaska, Hawaii or Europe. If this were all that was involved, subdivisions (b) and (c) of Item 1 would not be arbitrable.
The Agreement, however, provides that CBS will not use these territorial limitations “as a means of evading the provisions of section 1.05 relating to sub-contracting of video tape recording”. The Union has the right to show, if it can, that video tape recordings outside of those territorial limitations were made for the purpose of evading section 1.05.
CBS argues that any prohibition against subcontracting of video tape recordings outside of the territorial limitations would be illegal and that “ issues arising out of illegal contractual provisions are not subject to arbitration ” (citing Matter of Western Union Tel. Co. [Amer. Communications Assn.], 299 N. Y. 177). In that case, the conduct as to which arbitration was sought was thought by a majority of the court to be a violation of sections 552 and 1423 of the Penal Law, as well as of Western Union’s duty as a public service corporation under both Federal and State statutes (pp. 185-188).
Even there, the three dissenting Judges had some doubts about that interpretation and thought it a matter for the arbitrators (pp. 188-190).
Here the alleged illegality in Items 1 (b) and (c) is that they are outlawed by the 1959 amendment to section 8 (subd. [e]) of the National Labor Relations Act (ÍT. S. Code, tit. 29, § 158, subd. [e]). The Union states that this new amendment has not yet been judicially construed and CBS cites only Congressional debates in support of its interpretation. The *977 claim of illegality is not so clear at this time as to justify removing this issue from the arbitrators.
If during the course of the arbitration the new statute is authoritatively interpreted, that interpretation can be submitted to the arbitrators, and a determination can be set aside on judicial review as clearly wrong (Matter of Western Union Tel. Co., supra). In any event, even if it be contended that a prohibition against subcontracting outside of the 200-mile limit would be illegal, the arbitrators could find against CBS on that issue if they found such subcontracting was used to evade the prohibition against subcontracting within the 200-mile limit.
The motion to stay arbitration as to Item 1 is denied and the cross motion to compel arbitration is granted.