John P. Donohoe, J.
This petition for a judgment staying the arbitration between the petitioner, Carmel Central School District, Putnam County, New York, and respondents, Carmel Teachers Association and the American Arbitration' Association, as arbitration administrator, on the grounds that there is no agreement to arbitrate, and the arbitration procedure has been abandoned by the respondent Carmel Teachers Association, and that the relief requested is beyond the power of the arbitrator, is granted.
In this proceeding under CPLR article 75, the petitioner school district moves to stay the respondent teachers’ association and the American Arbitration Association from arbitrating a claimed controversy under a collective bargaining agreement.
The underlying facts are as follows: Carmel Central School District entered into a written agreement authorized by article 14 of the Civil Service Law (Taylor Law) with the Carmel Teachers Association as the employee organization, effective July 1, 1971 for the period of one year. During the effective period of the agreement, on May 11, 1972, the Board of Education of the petitioner abolished the position of nurse-teacher and created the position of registered nurse, effective July 1, 1972. On May 16, 1972, the Board of Education eliminated the position of one psychologist from the psychology staff of the district.
The individual employees of the district who were affected by the changes were five in number. Four of them held the position *64 of nurse-teachers. One was a psychologist. All of their positions were eliminated.
Of the four nurse-teachers, three accepted positions as registered nurses commencing with the 1972-1973 school year. One retired, effective the end of the 1972 school year. The psychologist took a position with another school district.
None of the five employees affected by the change has joined in this proceeding or participated in the grievance procedures which preceded it.
After the Board of Education announced its action to elimínate the five positions, the teachers ’ association, by its president, filed a formal grievance against the school district on June 29, 1972. In it, he claimed that the district had violated the preamble and articles I, III, IV, V, VI, VII, VIII, XIX and XVII of the contract, that it had violated board policy— section I, and had violated ‘ ‘ oral agreement reached June, 1971 re: nurse teacher position in special meeting between CTA and Board
The grievance procedure is defined in article VIII C of the contract, beginning at page 50. It is separated into four stages, which are described in section 5. Generally, these stages involve presentation of grievances first to the teacher’s immediate supervisor, then to the chief school administrator, then to the Board of Education, and finally, if the issues are not by that time resolved, to an arbitrator selected mutually by the parties from a list supplied by the American Arbitration Association.
On July 5, 1972 the school administrator wrote to the president of the teachers’ association, rejecting the grievance, on the ground that the association was not an aggrieved party as defined by section 2.5 of the agreement, and advising him that before the grievance would be considered, the association must present written authorizations from the persons whose positions had been abolished. These written authorizations were never supplied.
On July 17, the association’s president resubmitted the grievance, claiming to be entitled to invoke section 3.3 of the grievance procedure which says, “ If a grievance affects a group of teachers and appears to be associated with system-wide policies, it may be submitted by the association directly at Stage 2 ”.
On July 21, the Superintendent wrote to the association president that ‘ ‘ The elimination of the positions of School Psychologist and School Nurse Teacher are not associated with system-wide policies and consequently the O. T. A. ¿as no right to submit this grievance under Section 3.3 of the procedure
*65 On July 31, the association president wrote to the Board of Education stating the association’s dissatisfaction with the administrator’s decision and appealing to the board for its decision.
On August 8, the president of the Board of Education wrote to the association’s president advising him that “ I have reviewed [the Superintendent’s] response to you and find that his answer concerned itself not with a decision on a grievance but rather with the opinion that the action in question is not within the grievance rights inherent in the contract.
“ I concur with this opinion ”.
On November 7,1972 the association served a demand for arbitration upon the Superintendent and the Board of Education, demanding that the school district reinstate the abolished positions and offer the positions to the persons who formerly held them, with back pay.
The school district has declined to join in the selection of an arbitrator, but has asked the American Arbitration Association to hold the application in abeyance pending application for a stay.
The school district opposes arbitration upon the grounds (1) that the teachers’ association is not an aggrieved party entitled to maintain this proceeding, (2) that the association’s demand for arbitration was not timely, and (3) that the dispute is not arbitrable.
Petitioner relies upon provisions of the agreement to sustain its position. The first of these is article VIII (C), section 2.5: ‘' Aggrieved party shall mean any person or group of persons in the negotiating unit filing a grievance ’ ’. Section 2.9, Teachers Rights: “In all the following grievance procedures, the teacher has the right to pursue grievance without the involvement or compliance of the G. T. A. if he so wishes ’ ’. Section 3.1: ‘ ‘ All grievances shall include the name and position of the aggrieved party ”.
The second prong of the attack is based upon article VTII (C), section 5.4, “ Stage 4: Arbitration 1. After such hearing [before the Board of Education] if the teacher and/or Association are not satisfied with the decision at Stage 3, and the Association determines that the grievance is meritorious and that appealing it is in the best interests of the school system, it may submit the grievance to arbitration by written notice to the Board of Education within fifteen (15) school days of the decision at Stage 3 ”. “ Section 4.1: Since it is important to good relationships that grievances be processed as rapidly as possible, *66 every effort will be made by all parties to expedite the process. The time limits specified for either party may be extended only by mutual agreement ”.
The teachers’ association does not claim that its time to demand arbitration was extended by mutual agreement.
The main thrust of respondent’s argument is that the determination of these issues is a matter of interpretation of the contract. Such interpretation, respondent contends, lies solely within the province of the arbitrator, relying for authority upon Matter of Exercycle Corp. (Maratta) (9 N Y 2d 329); Board of Educ. Cent. School Dist. No. 1 of Town of Grand Is. v. Grand Island Teachers’ Assn. (67 Misc 2d 859); Matter of Columbia Broadcasting System (Freeman) (26 Misc 2d 972); Matter of Board of Educ. Union Free School Dist. No. 12 (Brentwood Teachers Assn.) (N. Y. L. J., Feb. 23, 1973, p. 20, col. 2, and the authorities cited therein).
The last of the cited eases, which is also known as Brentwood Teachers Association, concerns issues very similar to those presented here. Special Term held that the issues should be submitted to arbitration, since the contract was so ambiguous on the issue of whether the teachers association fits the definition of a “ group of persons ” constituting an aggrieved party that it was referable to arbitration, citing Board of Educ. Union Free School Dist. No. 3, Town of Huntington v. Associated Teachers of Huntington (30 N Y 2d 122).
The decision in the Brentwood case does not point out what the underlying grievance was. Presumably, it had to do with one of the terms and conditions of employment of teachers. A reading of the decision of the Court of Appeals in Board of Educ. Union Free School Dist. No. 3, Town of Huntington v. Associated Teachers of Huntington (cited above) makes it quite clear that a board of education has the authority to negotiate and enter into agreements with teachers concerning the terms and conditions of employment, under section 204 of the Civil Service Law, but that it does not have the authority to negotiate and agree upon matters outside such terms and conditions of employment.
The creation and abolition of positions within a school district, in good faith, are functions of boards of education. The respondent does not claim that petitioner acted in bad faith. (Matter of Siniapkin v. Nyguist, 68 Misc 2d 214; Matter of Jones, No. 8560-12 N. Y. St. Ed. Dept. Rep.; Matter of Henle, 11 N. Y. St. Ed. Dept. Rep. 118.) The Board of Education may not delegate its authority to create or abolish positions.
*67 Such creation and abolition are, therefore, not terms and conditions of employment, and because they are not, boards of education may not negotiate and contract with respect to them. It follows that even if there were some ground upon which respondent could claim that the abolition of positions was a part of the subject matter of the agreement between the parties, the legality of such a provision could not be upheld.
While the jurisdiction of the arbitrator has been broadened in recent years, nevertheless, when the nature of the condition precedent has been clearly indicated, it is for the court and not the arbitrator to decide the issue of arbitrability. (North Babylon Board of Educ., Union Free School Dist. No. 3 v. North Babylon Teachers Organisation, N. Y. L. J., March 2, 1973, p. 21, col. 2, citing Matter of Board of Educ. [Heckler Elec. Co.], 7 N Y 2d 476.) The condition precedent here is the existence of an arbitrable issue. The issue presented is not arbitrable.
Were it not for the prohibition against arbitration of the issue in this case imposed by statutory limitation of the board’s authority, it would still be necessary to stay arbitration because of the respondent association’s delay in demanding arbitration. No claim is made that the petitioner consented to an enlargement of time within which to initiate the arbitration. In these circumstances, respondent’s delay from the commencement of the school term in early September, 1972 to November 7, 1972 far exceeds the 15-day period prescribed by the contract and requires that the arbitration be stayed. (Matter of River Brand Rice Mills v. Latrobe Brewing Co., 305 N. Y. 36; Matter of Broadway-40th St. Corp [Manhattan Co.], 296 N. Y. 165; North Babylon Board of Educ. Union Free School Dist. No. 3 v. North Babylon Teachers Organisation, N. Y. L. J., March 2, 1973, p. 21, col. 2, supra.)