In the Matter of the Arbitration between the BOARD OF EDUCATION OF THE ENLARGED CITY SCHOOL DISTRICT OF THE CITY OF AUBURN, Respondent, and AUBURN TEACHERS ASSOCIATION, Appellant.

Fourth Department, July 18, 1975

*Bernard F. Ashe (Richard C. Heffern* of counsel), for appellant.

*William Goldman* for respondent.

MOULE, J. The question presented on this appeal is whether the members of one of several collective bargaining units under contract with a municipal employer may prosecute to arbitration an unasserted grievance of a member of another bargaining unit when such grievance, if asserted, would necessarily affect the rights of members of the unit seeking to prosecute the grievance.

Appellant Auburn Teachers Association (hereinafter Teachers) is the recognized representative of a bargaining unit comprised of all teachers employed by the Board of Education of the Enlarged City School District of the City of Auburn (hereinafter the District). The Auburn Educational Secretaries Association (Secretaries) is the certified representative of another bargaining unit comprised of the District's secretarial, clerical and paraprofessional employees. Included among the

paraprofessionals represented by the Secretaries are persons holding the position of teacher's assistant.

On August 21, 1972 Donna Brown was hired by the District on a probationary basis as a teacher's assistant in the Physical Education Department. Shortly thereafter, William Lockhart was hired to fill another such position. On March 9, 1973, Dale Post, individually and as president of the Teachers, filed a grievance with the principal of Auburn High School in accordance with the grievance procedure outlined in the contract between the Teachers and the District, alleging that the District, in hiring Brown and Lockhart, had violated the terms of its contract with the Teachers by not paying them in accordance with the salary schedule provided therein for regular teachers. Back pay was demanded for Brown and Lockhart and it was further demanded that they henceforth be paid in accordance with the terms of the Teachers Unit contract.

The Teachers' grievance was turned down by the school principal and thereafter was brought before the superintendent of schools. At this stage of the grievance process, it was asserted that Brown and Lockhart were both college graduates and had been performing full-time teaching duties. In failing to compensate these employees as teachers, violations of the recognition clause, the salaries clause, the co-operation clause and the joint code of ethics provisions of the Teachers' contract were claimed. At no time, however, did Brown and Lockhart or the Secretaries participate in the proceedings or join in the grievance.

Both the superintendent of schools and subsequently the District, acting through its Board of Education, took the position that the grievance asserted by the Teachers could not be recognized since neither of the employees in question was a member of the Teachers unit nor a party to its contract. The Teachers then sought arbitration but were met with a motion to stay such proceedings under CPLR 7503 (subd [b]) on the ground that an agreement to arbitrate this matter had not been made. Special Term, Supreme Court, Cayuga County, issued an order granting the motion to stay and the Teachers have appealed.

The collective bargaining contract between the Teachers and the District contains a broad arbitration clause. Grievances subject to arbitration are defined as "any claimed violation, misinterpretation or inequitable application of any

matters included in this Agreement." The recognition clause of the contract acknowledges that the Auburn Teachers Association is the "exclusive negotiating agent for all personnel within the Teachers Unit." A party is defined as either the Board of Education or "any employee whose position is listed in the units recognized by the Board of Education" and either the teacher "and/or [the] Association * * * may submit [a] grievance to arbitration."

It is clear that the avowed public policy of this State as expressed by the Legislature in section 200 of the Civil Service Law, commonly known as the Taylor Law, is to encourage voluntary resolution of labor disputes involving public employees through forums such as arbitration *(Matter of City School Dist. of City of Poughkeepsie [Poughkeepsie Public School Teachers Assn],* 35 NY2d 599; *Matter of Long Is. Lbr. Co. [Martin],* 15 NY2d 380; *City of Auburn v Nash,* 34 AD2d 345; *Central School Dist. No. 1 v Litz,* 60 Misc 2d 1009, affd 34 AD2d 1092). Where a collective bargaining agreement contains an arbitration clause, disputes arising thereunder are presumptively arbitrable in the absence of clear contractual language to the contrary *(Matter of Long Is. Lbr. Co. [Martin], supra; Board of Educ. of Chautauqua Cent. School Dist. v Chautauqua Cent. School Teachers Assn.,* 41 AD2d 47). This rule applies to both procedural and substantive matters alike *(Wiley & Sons v Livingston,* 376 US 543; *Matter of Long Is. Lbr. Co. [Martin], supra; Matter of City of Johnstown [Local 779],* 43 AD2d 874; *Central School Dist. No. 1 v Litz, supra).* The very question of whether a particular issue is subject to arbitration is one for the arbitrator to determine *(Steelworkers v Enterprise Corp.,* 363 US 593; *Steelworkers v Warrior & Gulf Co.,* 363 US 574; *Steelworkers v American Mfg. Co.,* 363 US 564; *Matter of Long Is. Lbr. Co. [Martin], supra; City of Auburn v Nash, supra).*

The CPLR provides that an agreement to submit a controversy to arbitration is enforceable without regard to the justiciable character of the controversy and further provides that the court should not consider "whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute" (CPLR 7501). An application to stay arbitration may be granted only if a valid agreement has not been made or has not been complied with, or if the claim sought to be arbitrated is barred by the Statute of Limitations (CPLR 7503, subd [b]; CPLR 7502, subd [b]; see

*Board of Education of Chautauqua Cent. School Dist. v Chautauqua Cent. School Teachers Assn., supra).*

In the situation now before us the individual grievant, Dale Post, president of the Teachers, is a teacher himself and a member of the teachers' bargaining unit. He thus is a party to the Teachers' contract with the District as that term is defined in the bargaining agreement. There is indeed a dispute involved, concerning the representation clause in the contract, a matter certainly included in the agreement. It makes no difference for the purpose of referring a matter in dispute to arbitration whether the grievant's claim is tenable or whether it affects him personally. Suffice to say that the substance of the instant complaint affects all teachers indirectly, its gravamen being whether the District should be permitted to hire two individuals to do teacher's work without commensurate compensation under the pretense that such persons' technical job category is that of teacher's assistant.

The District contends, however, that even if this controversy be held otherwise proper for arbitration, the actual dispute involved is a representational one and section 205 (subd 5, par [a]) of the Civil Service Law vests the Public Employment Relations Board (PERB) with exclusive jurisdiction for determining such matters. It points to language in the Teachers' contract providing that the arbitrator "shall have no power or authority to make any decision which requires commission of an act prohibited by law" or which is beyond the scope of the agreement itself and urges in essence that if the arbitrator were permitted to decide this issue on its merits any decision that might be forthcoming would necessarily encroach upon PERB's jurisdiction and, therefore, ultimately must be overturned. Three nisi prius cases *(Matter of Carmel Cent. School Dist. [Carmel Teachers Assn.],* 76 Misc 2d 63; *Matter of Putnam Val. Cent. School Dist. [Putnam Val. Federation of Teachers],* 75 Misc 2d 374; *Board of Educ. of Cent. School Dist. No. 1 v Lakeland Federation of Teachers,* 74 Misc 2d 430) are heavily relied upon. We think this reliance is misplaced.

The contractual prohibitions against the arbitrator making a decision contrary to law or the provisions of the agreement amount to no more than a statement of the general grounds upon which judicial review of the arbitrator's award, as provided for in CPLR 7511, may be based. For us to hold at this stage in the proceedings that the arbitrator will render a decision violative of law or in excess of his contractual author-

ity would be to engage in mere speculation, given the many possible means of resolving, compromising or settling this dispute that the arbitrator has at his disposal. Further, to do so would require us to pass upon the merits of the controversy, which we may not now do (CPLR 7501). Without specifically deciding the questions raised or becoming involved with their merits, we are not at this point entirely convinced that this is a jurisdictional dispute at all. The Teachers' grievance is susceptible of varying interpretations, at least one of which is that the Teachers are not seeking to enlarge their bargaining unit by absorbing all or any teacher's assistants into it but are merely trying to protect their interests as a unit by prohibiting the District from permitting teacher's assistants to function as teachers and thereby jeopardize their job status.

In any event, even if this is a jurisdictional dispute, a direction that it proceed to arbitration does not necessarily oust PERB of its jurisdiction. If arbitration fails to resolve the matter to the satisfaction of both parties, the party remaining aggrieved may still bring it before PERB, or seek redress in the courts. Arbitration provides just another opportunity to resolve this dispute amicably and internally before the parties reach their limits of tolerance and external authorities must be called upon to intervene. This procedure has been sanctioned by the United States Supreme Court in *Carey v Westinghouse Corp.* (375 US 261, revg. 11 NY2d 452), where a very analogous factual situation was presented, and is in accord with the principles of the Taylor Law.

Accordingly, the order staying arbitration should be reversed and the parties directed to proceed to arbitrate their differences.

MARSH, P. J., MAHONEY, GOLDMAN and WITMER, JJ., concur.

Order unanimously reversed with costs and motion denied.