OPINION OF THE COURT
Fuchsberg, J.
We are called upon to determine the arbitrability of a dispute involving a no-reprisal clause in a public sector collective bargaining agreement between the South Colonie Central School District and the South Colonie Teachers Association. Special Term denied the district’s petition to stay the arbitration demanded by the association. The Appellate Division affirmed by a vote of three to two. For the reasons which follow, we now uphold its determination.
The facts are undisputed. Between September 4 and September 19, 1975, the association, during the course of a strike which it was conducting against the district, set up a picket line around its buildings. Carol Landau, a clerical employee of the district and not a member of the teachers’ collective bargaining unit, would have had to cross the picket line in order to report to work. She did not do so. Thereafter, the district elected to terminate her employment and has affirmatively specified its reason for doing so as her absence "from her assigned duties without permission for a period of twelve days”; those were the days on which she had respected the picket line.
At the conclusion of the strike, the teachers’ association and the school district entered into a collective bargaining agreement. In doing so, the parties were acting consistently with *140 the stated policy of the Taylor Law to encourage "public employers and such employee organizations to agree upon procedures for resolving disputes” (Civil Service Law, § 200). The agreement they reached contained mutual "no-reprisal” clauses in these words:
"The South Colonie Central School District * * * agrees it will not engage in any acts of reprisal against anyone because of their participation in the job action of September 4,5,8,9,10,-11,12,15,16,17,18,19, 1975” (emphasis added). (It is clear from a physical examination of the signed agreement that the word "anyone” was substituted for the words "any teachers” in the original typed text before it was executed.)
"The South Colonie Teachers Association * * * agrees it will not engage in any acts of reprisal against anyone who worked during the aforementioned time or against any other district employees or against any school official” (emphasis added).
These provisions were followed immediately by the following sentences:
"The [district] agrees not to institute any further court proceedings related to the above referred to job action except as may be required by law.
"Notwithstanding the above this agreement shall in no way limit the district in proceeding to enforce the specified penalty provisions of the Taylor Law.”
The association maintains that Ms. Landau’s discharge was in contravention of the first of the quoted clauses. The district having refused to participate in the contractual grievance procedures which the association attempted to pursue on her behalf, the association invoked the grievance procedure’s Step 3, which provides for final and binding arbitration under the rules of the American Arbitration Association. In essence, the position of the district is that, irrespective of whether the language of the agreement may be read to indicate an intent to cover nonunit employees as third-party beneficiaries, the grievance machinery is not applicable to an employee who is not a member of the collective bargaining unit represented by the association.
The contract defines an arbitrable grievance as one "based upon an event or condition which affects the terms and conditions of employment of a teacher or group of teachers *141 and/or the interpretation or meaning of any of the provisions of this Agreement” (emphasis added).
The two pivotal questions raised for us by these facts are whether the arbitration claim with regard to the subject matter of the dispute here (a no-reprisal clause which, if read as the association contends it should be, could be found to apply to an employee other than a member of the teachers’ unit) falls within the permissible scope of article 14 of the Civil Service Law (the Taylor Law) (Matter of Acting Superintendent of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.], 42 NY2d 509, 513) and, if it does, whether the parties’ agreement to arbitrate is sufficiently "express, direct and unequivocal as to the issues or disputes to be submitted” (p 511).
Since the scope of the agreement to arbitrate appears to require only brief comment, we turn to it first. On its very face, it is not a narrow one. As already noted, when the school district and the teachers’ association voluntarily reached accord to arbitrate future grievances, they comprehensively included controversies "based upon an event or condition which affects the terms and conditions of employment” and "the interpretation or meaning of any of the provisions of th[e] Agreement”. The district thereby undertook to commit a very broad range of issues to ultimate arbitral determination.
Moving then to the validity of the agreement to arbitrate, preliminarily we observe that, even absent a no-reprisal clause, a union may invoke grievance and arbitration procedures on behalf of a nonmember whose treatment by a common employer may adversely affect the position of its own members (Matter of Board of Educ. [Auburn Teachers Assn.], 49 AD2d 35, 39, mot for lv to app den 38 NY2d 740). A fortiori, it may do so when a no-reprisal agreement exists. A primary objective of such a provision, though concerned also with nonsignatories, may be to protect or further the interests of the signatories themselves.
Minimization of the likelihood of disharmony in the parties’ future labor relations is a concern which, in the judgment of the parties, may well be served by letting "bygones be by-gones” (Republic Aviation Corp. v Republic Lodge No. 1987, IAM, 10 Misc 2d 783, 796 [Pette, J.]). The question as to whether the no-reprisal proviso now before us in fact had such a purpose and was intended to include employees other than those who were part of the teachers’ bargaining *142 unit would, unless proscribed by limitations on the scope of arbitration permitted under the Taylor Law, be a matter embraced within the parties’ undertaking to arbitrate the agreement’s "interpretation or meaning”.
Turning now to the Taylor Law as it has been "variously limited” (Matter of Acting Superintendent [Liverpool], supra, p 513), we find in it no interdiction of the commitment of the district to the no-reprisal clause in the context of the agreement in which it is found here. Significantly, it is coupled with the district’s specific reservation of its right to seek enforcement of the sanctions provided by statute against its striking employees under the Taylor Law (Civil Service Law, § 210), and it is not contended here that the discharge of Ms. Landau came about by reason of, or was required by, any implementation of the statute.
Furthermore, Ms. Landau did not demand the arbitration and she is not a party to this proceeding. It is the association, acting under the agreement between itself and the district, which called for the arbitration. We cannot say "that, in doing so, it did not act in furtherance of the interests of its members. The clause by which the teachers agreed not to engage in any acts of reprisal was hardly one which it can be said was not in the legitimate interest of the district when it bargained for it. And it no more can be said that the no-reprisal clause by which the district agreed, for its part, to engage in no reprisals did not bear on such concerns of the association as membership morale, future bargaining effectiveness, and the potential impact of these on the terms and conditions of employment of its members. Under all the circumstances, we therefore also do not perceive any prohibition against the district’s agreement to the clause here in "[p]ublic policy, whether derived from, and whether explicit or implicit in statute or decisional law, or in neither” (Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers’Assn.], 37 NY2d 614, 616-617).
 Nor does the fact that Ms. Landau was a provisional public employee subject to removal at will alter the situation. If it can be demonstrated to the satisfaction of the arbitration tribunal that the reason for dismissal was one in violation of the limitation permissibly assumed by the district under the no-reprisal clause, this violation could form a basis for determination that the discharge was wrongful. The "power to dismiss without explanation should not be deemed a license to *143 violate [this] bargained for” right (Board of Educ. v Chautauqua Cent. School Teachers Assn., 41 AD2d 47, 52, cited in Board of Educ. v Bellmore-Merrick United Secondary Teachers, 39 NY2d 167). Upon a finding of such violation, the remedy fashioned by the arbiters, however, would need to be one compatible with her provisional status.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
Order affirmed, with costs.