OPINION OF THE COURT
Fuchsberg, J.
The petitioner in this proceeding, brought pursuant to CPLR 7511, seeks vacatur of an arbitration award which, as part of the relief it grants, directs the reinstatement of certain teaching employees found to have been discharged in violation of a job security clause contained in a public sector collective bargaining agreement. The main issue on the present appeal is whether the arbitrator, in the absence of any express limitation on his powers, lacked authority to order the employees restored to their former positions at a time subsequent to the expiration date of the contract under which the dispute arose.
It was on September 9, 1974 that the petitioner, North Syracuse Central School District, and the respondent, North Syracuse Education Association, the duly recognized bargaining agent for the teachers, entered into the agreement. The period it covered was from July 1, 1974 to June 30, 1976. The asserted security clause, numbered section 75 and entitled "Adequate Number of Specialists”, reads: "An adequate number of competent specialists is essential to the operation of an effective educational program. The number of such specialists employed will be determined by need, availability, and the financial resources of the District; but the District at this time reaffirms its intentions to maintain the present ratio of specialists to classrooms and/or students in order to continue to offer a comprehensive educational program”.
In March, 1975, when the agreement still had more than a year to run, the district’s superintendent, apparently fearing rejection of its projected budget upon presentation to the district’s voters, recommended to the board of education that certain cost-cutting measures be instituted during the ensuing school year, i.e., the second year of this contract. Among the cuts he proposed was the elimination of the positions of 20 employees who fit the contract definition of "specialists” (four driver education teachers, 13 school nurse-teachers, two guidance counselors, and a part-time reading teacher). In due course, his recommendations were adopted and the employment of the 20 teachers was terminated.
*199 Not unexpectedly, respondent’s opposition to the abolition was strenuous. It took two paths. One was the contract’s grievance machinery, the final stage of which was to be final and binding arbitration. The other might be termed political. Pursuing procedures under article 41 of the Education Law, it attempted to persuade the district’s electors to exercise their franchise by voting for ballot propositions whose adoption would have restored the appropriation to cover the specialist teachers’ continued employment; this effort met defeat at the polls in June, 1975.
The arbitration route was to prove more fruitful. However, it did not get under way until after November 5, 1975, when the Supreme Court in Onondaga County denied a motion the district made for a stay of arbitration under CPLR 7503; in doing so, the court found that the asserted grievance was within the scope of the contract’s arbitration clause and that there was no merit to the district’s insistence that the security clause on which the teachers relied so impermissibly trespassed on the board’s managerial powers that its commitment to an arbitrator offended public policy.* In the ensuing arbitration, the hearings began on February 5, 1976, the abritrator’s partial decisions (on all but the remedy, on which a separate hearing was ordered to take place within 30 days) was handed down on April 26, 1976, hearings as to remedy were held on May 21 and 27, 1976, briefs and statements were submitted on June 17, 1976 and the final award was handed down on July 13, 1976.
Pertinently, the arbitrator held that section 75 constituted a "job security” clause and that it had been breached by the discharge of all but the part-time reading teacher. Remedially, he ordered that these employees be reimbursed for their lost wages for the 1975-1976 school year (less other earnings and unemployment compensation) and that those of the specialists who had not retired in the interim be restored to their positions "effective at the opening of the 1976-1977 school year”.
The district then commenced the present proceeding in which Special Term was of the opinion that the arbitrator had gone beyond the scope of his powers in requiring the grievants’ return to their former positions as of a time subsequent to the expiration of the agreement. It ordered modification of *200 the award to the extent of deleting the direction for reinstatement for the 1976-1977 school year. On cross appeals by both parties, the Appellate Division unanimously affirmed (57 AD2d 1056). Leave to appeal having been granted by this court only to the teachers’ association (43 NY2d 642; 42 NY2d 811), this is the only aspect of the arbitrator’s decision before us. For reasons which follow, we believe the award should have been confirmed in its entirety.
It is well settled that, when a dispute has moved to arbitration, a party seeking to vacate the ultimate award must meet a heavy burden, "for once the issue is properly before the arbitrator, questions of law and fact are merged in the award and are not within the power of the judiciary to resolve” (Matter of Binghamton Civ. Serv. Forum v City of Binghamton, 44 NY2d 23, 28). Needless to say, the same thing holds true when an arbitrator elects to disregard technicalities to achieve a just result (Rochester City School Dist. v Rochester Teachers Assn., 41 NY2d 578; Lentine v Fundaro, 29 NY2d 382). However, in the present case when the courts below concluded that the arbitrator had "exceeded his power” by ordering reinstatements to begin at a time when the termination date of the labor contract to which he owed his commission had passed, they posited their decision on a ground expressly sanctioned by CPLR 7511 (subd [b], par [1], cl [iii]).
Directly confronting that issue, we observe that it has long been recognized that, though an arbitrator’s authority stems from the contract in force at the time the grievance arose, the range of the exercise of that authority is not so limited. Thus, "[t]he mere circumstances * * * that a contract has been terminated does not foreclose the arbitration of issues which arise out of and relate to it” (Matter of Potoker [Brooklyn Eagle], 286 App Div 733, 736, affd 2 NY2d 553, cert den 355 US 883; see, also, Matter of Triborough Bridge & Tunnel Auth. [District Council No. 37], 44 NY2d 676; Matter of International Assn. of Machinists [Buffalo Eclipse Corp.], 9 NY2d 946; Matter of Lane [Endicott Johnson Corp.], 274 App Div 833, affd 299 NY 725, cert den 338 US 892). Nor is it to be assumed that the remedies ordered by an arbitrator must be capable of being performed during its term. Significantly, neither the arbitration clause nor the stipulated submission in the case before us hemmed in the arbitrator by any prohibition on his doing so, much less one that specifically would *201 have barred him from deciding on the reinstatements he ordered.
Obviously, to cut off the reach of the remedy at the terminal date of the contract would impair the permissible elasticity which constitutes one of the advantages of the arbitration device, especially in situations where the grievance arose near the end of the contract’s term, where the contract calls for a multitier processing of grievances and may therefore cause a lapse of time before they reach the arbitrator, or where one side has used dilatory tactics which prevent the dispute from being heard promptly. In such circumstances, it is not difficult to understand why an arbitrator’s award of reinstatement to take effect after the contract has expired is not only permissible, but perhaps necessary (Matter of Burt Bldg. Materials Corp. [Local 1205, Int. Brotherhood of Teamsters], 18 NY2d 556).
In making the challenged award here the arbitrator apparently was mindful of such considerations for he described, as an impelling motivation, the fact that it was "crystal clear * * * [that] it was too late in the 1975-76 school year to order the return of the teachers involved to the positions they held in the previous year * * * [and that] the usual arbitrator’s award of reinstatment of employees improperly discharged at the earliest moment * * * could not have been issued in the waning weeks of the 1975-76 school year.”
The district’s argument that the only permissible remedy was back pay or, for that matter, even a larger sum as monetary damages, does not withstand analysis. There are recognized factors other than strictly monetary ones, such as evaluation of performance, possibility of tenure, maintenance of skills, fostering of a desirable work environment, and the like, which impel employees to bargain for, and employers voluntarily to consent to, job security clauses. From the standpoint of the union, in securing the rights of individual workers it may be seen as properly protective of its members’ collective interests (cf. Matter of South Colonie Cent. School Dist. v Longo, 43 NY2d 136; Matter of Burke v Bowen, 40 NY2d 264; Matter of Board of Educ. [Auburn Teachers Assn.], 49 AD2d 35, mot for lv to app den 38 NY2d 740).
For such reasons, unless constrained by the arbitration agreement, an arbitrator might well determine that wrongful discharge of an employee is not fully compensable solely in dollars and cents, and, accordingly, an award which couples *202 payment of lost wages with a prospective order of reinstatement is not to be disturbed on that ground alone. (Matter of Fayetteville-Manlius Cent. School Dist. [Fayetteville-Manlius Teachers Assn.], 41 NY2d 818; Matter of British Overseas Airways Corp. v International Assn. of Machinists & Aerospace Workers, 32 NY2d 823). Indeed, an award of reinstatement, with or without back pay, is by now well fixed in the remedial arsenal to which public employment arbitrators may resort in order to make grievants whole (Matter of Three Vil. Teachers Assn. v Three Vil. Cent. School Dist., 43 NY2d 847; Matter of Fayetteville-Manlius Cent. School Dist. [Fayetteville-Manlius Teachers Assn.], supra, p 818; Board of Educ. v Bellmore-Merrick United Secondary Teachers, 39 NY2d 167) and it is clear that job security clauses, if voluntarily entered into and of reasonable duration, will be given effect (Matter of Whitney Point Cent. School [Whitney Point Teachers Assn.], 43 NY2d 663; Matter of Board of Educ. v Yonkers Federation of Teachers, 40 NY2d 268; Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers’ Assn.], 37 NY2d 614).
We also reject defendant’s argument that the effect of the reinstatement is to extend the job security clause ad infinitum. In ordering the teachers’ reinstatement, the arbitrator merely returned them to the status they would have occupied had they not been wrongfully dismissed. The new agreement for the 1976-1977 year was negotiated independently of this arbitration and both parties appear to be in accord that it applies equally to all teachers employed as of that date and gives no guarantees to the reinstated ones or the others as to what future agreements might provide as to any or all of them. And the arbitrator, expressing awareness that by the time of the reinstatement the parties would be operating under a different collective bargaining agreement, made clear that any unanticipated problems encountered upon reinstatement were to be dealt with under the terms of the new contract and its own grievance machinery, as would be done for all other employees.
Finally, no weight is to be placed on the district’s contention that the attempt to evade its contractual commitments is to be permitted because it was approved, or perhaps even demanded, by a vote of its electors. The people, acting directly, have no more power under our Constitution to shirk their valid obligations when these appear inconvenient than *203 do their elected representatives (see Flushing Nat. Bank v Municipal Assistance Corp. for City of N. Y., 40 NY2d 731; cf. Reitman v Mulkey, 387 US 369, 387 [Douglas, J., concurring]).
Accordingly, the order of the Appellate Division should be reversed insofar as appealed from and the arbitrator’s award reinstated.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
Order reversed, with costs, and the arbitrator’s award reinstated.

No appeal was taken from this decision.