OPINION OF THE COURT
Ira Gammerman, J.
In this CPLR article 75 proceeding, petitioner seeks a stay of arbitration pursuant to CPLR 403 (d); 6301 and 7503. Respondents oppose the motion on the grounds that the joint venture agreement between the parties specifically mandates *772 arbitration as the exclusive method of resolving disputes relating to that agreement.
Petitioner Israel Halpern is one of three co-owners (landowners) of a parcel of undeveloped land in the Village of New Hempstead, Rockland County. The landowners entered into a joint venture with respondents Edge Property Group, Inc. and Robert Jacobs on January 22, 1988. Under the agreement, the landowners contributed the property which respondents were to develop. One of the developer’s duties was to obtain a commitment for refinancing the mortgage on the property. In the event that such financing was not obtained within 14 days and closed within 60 days of the date of execution of the joint venture agreement, that agreement would "become void and be of no force and effect and neither of the parties hereto shall have any rights emanating from this agreement.” Other relevant contractual provisions include a binding arbitration clause to resolve disputes among the parties and a merger clause requiring any modification or waiver of any contract provision to be in writing, signed by all parties.
Sixty days passed and the refinancing was not closed. On March 24, 1988 (62 days after the date of execution), the attorney for George Lebovits, one of petitioner’s co-owners (who is not a party to this action), sent a letter to respondent Jacobs’ lawyer stating, in pertinent part, that: (1) the deadline for refinancing "appears to have expired”; (2) respondent Jacobs had given the landowners oral assurance that he could obtain necessary funding and that he had sufficient available funds to satisfy the existing mortgage; (3) the petitioner was "greatly concerned about the delays in obtaining the take-out financing”; and (4) the landowners were prepared to proceed provided Jacobs furnish "firm assurance now”. However, there was no mention of any written modification manifesting agreement of all parties to an extension of time.
On April 19, 1988, Bank Leumi made a formal loan commitment to Jazay Realty Corp., a corporation principally owned by Jacobs. The commitment was subsequently renewed three times. But by that time, a foreclosure sale of the property had been scheduled (although it was subsequently stayed by the filing of a chapter 11 bankruptcy proceeding).
Petitioner argues for the stay on two grounds. First, since there is no valid underlying agreement between the landowners and respondents, the arbitration clause must similarly be of no effect. Alternatively, even if there was an agreement to *773 arbitrate, respondents waived this right by litigating the same issues raised in the bankruptcy proceeding. In light of this explicit contractual language and the presence of the merger clause, only the first ground need be addressed.
It is not disputed that the joint venture agreement provides for binding arbitration to resolve disputes relating to the contract. Indeed, in the absence of a compelling public policy, arbitration is a preferred means for the settlement of disputes. (Matter of Prinze v Jonas, 38 NY2d 570 [1976].) The general policy of the courts is to encourage arbitration and to enforce arbitration agreements (Matter of Columbia Broadcasting Sys., 26 Misc 2d 972 [1st Dept I960]). But the express language of the agreement at bar obliterates "any rights emanating from this agreement” (emphasis added) if a timely written commitment for financing is not obtained. The commitment was not obtained and thus the right to arbitrate was extinguished.
Respondents reject this interpretation. They cite Matter of Popular Publs, v McCall Corp. (36 AD2d 927 [1st Dept 1971]) and Matter of Minkin (279 App Div 226 [2d Dept 1951], affd 304 NY 617 [1952]) to support the proposition that the question of whether the agreement pursuant to which the arbitration was sought has been canceled must be answered by the arbitrator, not by the court. But Popular Pubis, is factually distinguishable and Minkin is misconstrued. In Popular Pubis., there was a contract for a five-year term under which the parties performed and which continued to govern their relationship, even after the supposed termination date. The issue raised in Popular Pubis, was whether there was a termination by conduct rather than by express contractual language. Minkin involved an agreement containing an arbitration clause which was invalidated by a later agreement. The Appellate Division stayed the arbitration based on termination language which closely parallels that in the agreement at bar. The cancellation provision here must similarly be accorded full force and effect.
It is the court’s affirmative responsibility to resolve the threshold question of arbitrability. (See, e.g., Matter of County of Rockland v Primiano Constr. Co., 51 NY2d 1 [1980]; M.I.F. Sec. Co. v Stamm & Co., 94 AD2d 211 [1st Dept 1983].) It would be anomalous to empower the arbitrator to make that determination where an agreement, such as this one, extinguishes the rights of all parties (including the right to arbitrate) in the event that respondents fail to satisfy a condition precedent.
*774 Alternatively, respondents assert that the parties to the venture "expressly agreed to continue” development of the land notwithstanding the failure to obtain refinancing by the cut-off date. In so doing, they rely on Lebovits’ actual and apparent authority to bind petitioner with respect to the joint venture. But this begs the question. The contract indicates that the only permissible way for any participant to alter or waive any provision was through a signed writing. There is neither evidence nor allegation of unequal bargaining power, fraud, misrepresentation, duress, or overreaching. The parties were free to contract otherwise, if they wished.
Respondents’ argument also fails to withstand scrutiny under the paroi evidence rule. The rule prevents proof of an oral agreement to add to or vary a written agreement where the written understanding is clear and unambiguous. (Shah v Eastern Silk Indus., 112 AD2d 870 [1st Dept 1985].) Written agreements which are so clear and unambiguous on their face cannot be varied by oral agreements purporting to give a directly contrary impression. (Pomerance v Nanuet Natl. Bank, 57 AD2d 891, 892 [2d Dept 1977].) This is especially true where, as here, the written agreement contains a merger clause. (Katz v American Tech. Indus., 96 AD2d 932 [2d Dept 1983].) Even if the evidence of Lebovits’ authority to bind his co-owners was as uncontroverted as respondents allege, the paroi evidence rule would render such proof inadmissible.
Finally, respondents contend that since the reason the venture never achieved its objective was caused by internal squabbling among the landowners, petitioner should be es-topped from using the failure to obtain timely financing as the basis to stay the arbitration. It should be noted, however, that respondents’ lack of blameworthy conduct is also in dispute. In any event these bare and conclusory allegations are not sufficient to create an estoppel.
For the foregoing reasons, petitioner’s application to stay arbitration is granted.