[20 NYS3d 57]

In the Matter of the Arbitration between SOCIAL SERVICE EMPLOYEES UNION, LOCAL 371, Respondent, and CITY OF NEW YORK et al., Appellants.

In the Matter of CITY OF NEW YORK et al., Appellants, v SOCIAL SERVICE EMPLOYEES UNION, LOCAL 371, et al., Respondents.

First Department, November 24, 2015

## APPEARANCES OF COUNSEL

*Zachary W. Carter, Corporation Counsel*, New York City (*Devin Slack* and *Richard Dearing* of counsel), for appellants.

*Kreisberg & Maitland, LLP*, New York City (*Jeffrey L. Kreisberg* and *Jill Mendelberg* of counsel), for respondents.

**OPINION OF THE COURT**

Acosta, J.

At issue in this case is an arbitration award that ordered the City to reinstate laid-off employees with back pay, upon finding that the City had failed to comply with the "meet-and-confer" requirement of the parties' collective bargaining agreement. That provision mandated that, prior to any layoffs, the City meet and confer with the designated representatives of the appropriate union with the objective of considering feasible alternatives to all or part of the projected layoffs. We find that the arbitration award merely compels the City to follow the procedure delineated in the citywide collective bargaining agreement, and was therefore properly confirmed.

Background

In 2006, respondent City of New York transferred 18 community coordinators (CCs) from the Department for the Aging to respondent Department of Information Technology & Telecommunications' (DoITT) 311 Call Center. In November 2010, the City's Office of Management and Budget (OMB) directed DoITT to reduce its budget for the 311 Call Center by $4 million for fiscal year 2012. After considering various options, DoITT determined that the only way to meet OMB's budget demands was to lay off the CCs.

The 18 CCs facing potential layoff by DoITT were all members of petitioner, the Social Service Employee Union, Local 317 (the Union). This meant that they were covered not only by the terms of the Union's collective bargaining agreement with the City and DoITT, but also by the citywide collective bargaining agreement between the Union's parent body, District Council 37, American Federation of State, County and Municipal Employees, AFL-CIO, and the City of New York (citywide CBA).

Article XVII of the citywide CBA outlines various requirements the City must meet before laying off employees. First, the City must provide the appropriate union or unions with notice of layoffs "not less than thirty (30) days before the effective dates of projected layoffs." Second, during the notice period, "designated representatives of the [City] will meet and confer with the designated representatives of the appropriate union with the objective of considering feasible alternatives to all or

part of such scheduled layoffs." This mandatory "meet-and-confer" provision is not a mere formality; it lays out a non-exhaustive list of potential "feasible alternatives":

> "i. the transfer of employees to other agencies with retraining, if necessary, consistent with Civil Service law but without regard to the Civil Service title,

> "ii. the use of Federal and State funds whenever possible to retain or re-employ employees scheduled for layoff,

> "iii. the elimination or reduction of the amount of work contracted out to independent contractors, and

> "iv. encouragement of early retirement and the expediting of the processing of retirement applications."

Article XV, § 2 of the citywide CBA provides for dispute resolution by arbitration, that the arbitrator's award shall be "final and binding," and that the arbitrator may direct "such relief as the arbitrator deems necessary and proper, subject to the limitations set forth above and any applicable limitations of law."

There is no dispute that the City gave proper notice to the Union about the layoffs. However, in October 2011, the Union commenced arbitration in the City's Office of Collective Bargaining, alleging that the City and DoITT terminated the CCs without satisfying the citywide CBA's meet-and-confer requirement. The crux of the disagreement concerns a meeting between the parties on September 22, 2011, the day before the grievants received letters advising them that they were being laid off effective October 7, 2011. Brett Robinson, Deputy Commissioner of Financial Management and Administration, testified that at the meeting, the City did not offer any alternatives for the 18 employees to be laid off, there were no discussions about other alternatives to layoffs, and the Union was not asked to submit proposals to avoid the layoffs.

The arbitrator analyzed the record of the meeting and determined that meeting did not satisfy the meet-and-confer requirement, because "feasible alternatives" to layoffs were not properly discussed. As a remedy, the arbitrator ordered the reinstatement of the grievants to their former positions with full back pay.

The Union, on behalf of the grievants, filed a petition pursuant to CPLR article 75 seeking to confirm the arbitration award. The City and DoITT filed a petition to vacate the award. Supreme Court confirmed the award, and the City and DoITT appeal from that order.

Discussion

It is well settled that courts review arbitration awards with a high level of deference (*see Maross Constr. v Central N.Y. Regional Transp. Auth.*, 66 NY2d 341, 346 [1985]; *see also Matter of Allen [New York State]*, 53 NY2d 694 [1981]). An arbitration award thus may not be vacated unless "it violates a strong public policy, is irrational, or clearly exceeds a specifically enumerated limitation on the arbitrator's power" (*Matter of United Fedn. of Teachers, Local 2, AFT, AFL-CIO v Board of Educ. of City School Dist. of City of N.Y.*, 1 NY3d 72, 79 [2003], quoting *Matter of Board of Educ. of Arlington Cent. School Dist. v Arlington Teachers Assn.*, 78 NY2d 33, 37 [1991]).

■ Contrary to the City's assertion, the arbitrator's finding that the City did not meet its meet-and-confer obligation was rational. Specifically, the City suggests that because, as the arbitrator found, the City and the Union met on September 22, and the Union had the opportunity to, and in fact did propose alternatives to the layoffs during the meeting, and the agreement does not require the City to propose alternatives, or require the parties to come to agreement, there was no violation of the meet-and-confer requirement.

However, an arbitrator's award will not be vacated when there is "some basis in the record for each of the arbitrator's findings" (*Branciforte v Levey*, 222 AD2d 276, 276 [1st Dept 1995]). In this case, there is no doubt that the arbitrator's determination had a basis in the record. The record presented to us shows that the Union's vice-president for negotiations testified that "in prior layoffs, *as distinguished from these layoffs*, there had been discussions between the parties about alternatives to layoffs" (emphasis added). Deputy Commissioner Robinson testified that there was no discussion about alternatives to the layoffs at the September 22 meeting and that the Union was not asked to submit proposals to avoid the layoffs. The Executive Director of the 311 Call Center, while claiming that "alternatives to avoiding the layoffs were considered," admitted that any such alternatives "were not discussed with the Union." Moreover, some grievants received layoff letters on September 23, the day after the meeting, which

the arbitrator noted suggested that the City had already made up its mind about the layoffs before the meeting. This evidence constitutes a rational basis for the arbitrator's determination that the September 22 meeting did not fulfill the meet-and-confer requirement.

The City also argues that the remedy of reinstatement with back pay violated a strong public policy by infringing upon the "managerial prerogative" reserved to the City and DoITT to decide which positions to eliminate. The City situates its claim in Administrative Code of the City of NY § 12-307 (b), which "specifically and clearly removes from collective bargaining considerations the right of the public employer to retire its employees from duty because 'of lack of work or for other legitimate reasons' " (*DeLury v City of New York*, 51 AD2d 288, 294 [1st Dept 1976]). According to the City, the arbitrator's reinstatement directive reads a "job security" provision into the citywide CBA, thereby conferring a benefit upon the grievants that they did not contract for, and therefore should be seen as an impermissible intrusion into the sphere of municipal authority.

"[T]he scope of the public policy exception to an arbitrator's power to resolve disputes is extremely narrow" (*Matter of DeMartino v New York City Dept. of Transp.*, 67 AD3d 479, 480 [1st Dept 2009]). "A public policy whose violation warrants vacatur of an arbitration award must entail 'strong and well-defined policy considerations embodied in constitutional, statutory or common law [that] prohibit a particular matter from being decided or certain relief from begin granted by an arbitrator' " (*Matter of Local 333, United Mar. Div., Intl. Longshoreman's Assn., AFL-CIO v New York City Dept. of Transp.*, 35 AD3d 211, 213 [1st Dept 2006], *lv denied* 9 NY3d 805 [2007]). " 'Judicial restraint under the public policy exception is particularly appropriate in arbitrations pursuant to public employment collective bargaining agreements' " (*DeMartino*, 67 AD3d at 480).

■ The crux of the City's argument is that the directive to reinstate the grievants infringed on the discretion of the City to make firing decisions. The directive does no such thing. Nothing in the arbitrator's award precludes the City from following the citywide CBA procedure to which it agreed and ultimately laying off the grievants. There is no managerial prerogative to violate the contract. As a proper meet-and-confer must precede any layoff, the arbitrator's remedy simply restored the status quo pending a proper meet-and-confer.

For this reason, the City's argument that the arbitrator's reinstatement directive exceeded her enumerated powers also lacks merit. Article XV, § 2 of the citywide CBA states, in pertinent part, that "[a]n arbitrator may provide for and direct such relief as the arbitrator deems necessary and proper, subject to the limitations set forth above and any applicable limitations of law." Reinstatement awards are "well fixed in the remedial arsenal to which public employment arbitrators may resort in order to make grievants whole" (*North Syracuse Cent. School Dist. v North Syracuse Educ. Assn.*, 45 NY2d 195, 202 [1978]). The arbitrator's award "merely returned [the grievants] to the status they would have occupied had they not been wrongfully dismissed" (*id.*). Article XVII requires the meet-and-confer to occur within the 30 days before the impending layoffs. Proper performance of the contract would therefore result in the meet-and-confer between the City and the Union taking place while the employees were still in their respective positions. By ordering reinstatement, the arbitrator made it possible for the contract to be executed as intended.

The City casts the arbitrator's remedy as conferring upon the grievants a "job security" benefit that they did not contract for. To be sure, the citywide CBA is not a blanket guarantee that union members will never be laid off. But nor are the Article XVII procedures simply formalities to be checked off in the firing process. Rather, they constitute substantive protections for employees facing layoff. The goal is to bring the leverage of the parties as near as equal as possible, and so the procedures must be taken seriously.

The City's reliance on *Dalton v Educational Testing Serv.* (87 NY2d 384 [1995]) is misplaced. The provision of the contract at issue there required the defendant testing firm to review materials produced by students whose test scores the firm believed were a result of fraud, and not merely cancel the scores. Upon its finding that the defendant did not properly review the plaintiff student's materials, the trial judge ordered the defendant to release the plaintiff's score. The Court of Appeals held that specific performance of the contract did not require the defendant to release the plaintiff's scores, only to review his proffered materials in good faith. As the Court said, "[T]he validity of Dalton's November SAT score has yet to be determined" (87 NY2d at 393). Similarly, in this case, the reinstatement directive does not preclude the City from terminating the grievants after it has conferred with the Union.

Accordingly, the judgment of the Supreme Court, New York County (Michael D. Stallman, J.), entered May 16, 2014, confirming the arbitration award dated April 5, 2013, should be affirmed, without costs.

TOM, J.P., RICHTER and KAPNICK, JJ., concur.

Judgment, Supreme Court, New York County, entered May 16, 2014, affirmed, without costs.